**DEERFIELD MEDICAL CENTER, Medallion Executive Consultants, Inc., et al., Plaintiffs-Appellants,**

v.

**CITY OF DEERFIELD BEACH, City Commission of Deerfield Beach, et al., Defendants-Appellees.**

No. 81–5215.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Nov. 13, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

**330**

Lucas & Miller, Roy Lucas, Lynn I. Miller, Jeanette Helfrich, Washington, D. C., for plaintiffs-appellants.

Andrew Mauradis, City Atty., City of Deerfield Beach, Deerfield Beach, Fla., Barry N. Natter, George A. Patterson, Deerfield Beach, Fla., for defendants-appellees.

Before MORGAN, KRAVITCH and ANDERSON, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

The instant action arises out of an attempt by plaintiffs to establish a medical facility providing abortion services in the City of Deerfield Beach, Florida. The City Commission of Deerfield Beach denied an application by plaintiffs for an occupational license to open an abortion facility in an area zoned for business operations. Plaintiffs filed suit in the Southern District of Florida challenging the Commission's actions. The primary issue on appeal is whether the district judge abused his discretion in denying plaintiffs' motion for a preliminary injunction. We hold that the denial of plaintiffs' motion under the facts presented constituted such an abuse of discretion.

## I.

Plaintiffs-appellants are two individuals and a Florida corporation doing business as Deerfield Medical Center (hereinafter "DMC"). In August 1980, the two individual plaintiffs purchased a one-story professional building located at 540 Federal Highway, Deerfield Beach, Florida. Plaintiffs renovated and equipped the building to provide medical care, including legal abortion services. Also, plaintiffs became associated with a Florida licensed obstetrician-gynecologist, who was to provide the medical treatment at the clinic.[1]

Plaintiffs' building is located in an area zoned "Highway Business District" bordering U. S. Highway 1. Under the City's zoning scheme this district was established to "provide suitable locations for those commercial activities which function relatively independently of intensive pedestrian traffic and proximity of other firms. The activities typically require direct auto traffic access, and visibility from the roadway." City Code, Art. VII–A Section 8A.01. This

---

1. The obstetrician-gynecologist was initially not a party to this suit. He became a party plaintiff in the district court after the hearing on the preliminary injunction by way of a second amended complaint. At the time of oral argument in this case plaintiffs' attorney filed the physician's motion to intervene as an appellant with DMC. That motion was denied by this court on July 16, 1981. The physician, therefore, will not be treated as a party to this action in evaluating the merits of this appeal.

statement of purpose is supplemented by other provisions outlining two categories of allowable uses within the Highway Business District: "Uses Permitted" and "Conditional Permitted Uses" (hereinafter "conditional uses"). In order to qualify as a permitted use, the business sought to be conducted must be one of twenty-two uses listed in the ordinance.[2] Conditional uses are businesses of a "similar nature to those enumerated."[3] City Code, Art. VII–A Section 8A.03.

The Highway Business District already accommodates exceptionally divergent uses including a hotel, a drug store, two liquor stores (one of which is located diagonally across the street from St. Ambrose Catholic Church), a chiropractor's office and the offices of six physicians (two general practitioners, a podiatrist, a vascular gynecologist and two surgeons). The District runs along both sides of Highway 1 for virtually the full length of Deerfield Beach. Immediately behind the Highway Business District are areas zoned for single and multi-family residences.

In December, DMC filed an "Application for Occupational License" with the city to operate a "medical/surgical" facility in the Highway Business District. City zoning officials initially concluded that the proposed clinic did not constitute a permitted use,[4] and a hearing was scheduled before the Planning and Zoning Board to determine if DMC would qualify for a conditional use permit under City Code Section 8A.03. The hearing was held on January 8, 1981. By a vote of four to three the Board recommended that DMC be granted a conditional use permit.[5] This recommendation was then referred to the City Commission for final approval.

2. The most notable of these permitted uses include

    (1) Automobile Laundries . . .
    (3) Amusement establishments, including Bowling Alleys, Billiard Parlors, Dance Halls, Gymnasiums, and Swimming Pools . . .
    (8) Eating establishments, with or without serving alcoholic beverages, having fixed seating accommodations for not less than forty (40) persons . . .
    (10) Laboratories—Medical, Dental, Research and Testing.
    (11) Motel or Motor Hotels of at least twenty (20) rooms, with or without restaurant and/or cocktail lounges . . .
    (13) Movie Theaters (indoor) . . .
    (15) Physical Culture and Health Services, Gymnasiums, Reducing and Massage Salons . . .
    (18) School, Vocational and Technical . . .
    (21) Offices, business or professional . . . .
City Code, Art. VII A Section 8A.02.

3. To receive a use permit, a person desiring to open a business must file an "Application for Occupational License" with city zoning officials. City zoning officials without a hearing then determine if the business qualifies as a permitted use. If a permitted use is found, a permit is granted without further review. An application not demonstrating a permitted use may be 1) "[denied] on its face," or 2) "[reviewed as] a conditional use." Brief of Appellee at 2. Review of an application to determine qualification as a conditional use is made before the Planning and Zoning Board, and the Board's recommendation must be approved by the City Commission.

4. Defendants argue that plaintiffs should have appealed the denial of the application as a permitted use to the City Board of Adjustment and that the failure to take advantage of this avenue of appeal waived any later challenge to the preliminary determination of city zoning officials. We are not required, however, to resolve this issue because grounds for granting a preliminary injunction are presented by the City Commission's final determination that DMC did not qualify as a conditional use. Also, as a practical matter, any arbitrary action by city officials in denying the application as a permitted use would be repeated in the City Commission's determination that DMC did not qualify for a conditional use permit. We note, however, that *city officials* transferred plaintiffs' application to the Planning and Zoning Board for consideration as a conditional use; the "Application for Occupational License" did not require the applicant to specify whether a permitted use or a conditional use was being sought; and under the facts presented in the record it is questionable whether there has been a knowing waiver of the constitutional claims presented.

5. All three of those voting to deny DMC's application made statements indicating that they opposed the application because of their personal objections to abortion. The Board's Chairman, a negative voter, stated that if "[DMC] were to open as a medical center, nobody would question it. * * * If [the applicant] did not say he was going to perform abortions, we would've passed [the application] without any question." Record at 39.

DMC's application was reviewed by the City Commission at a public hearing held on January 20, 1981. The Commission heard testimony by numerous residents of Deerfield Beach, including several clergy, the vast majority of whom expressed opposition to DMC's application *because* the clinic intended to provide abortion services. After the testimony was completed, a motion was introduced to deny DMC's application, and the motion was passed by the unanimous vote of the Commission members.

DMC and the other plaintiffs filed suit in district court on February 11, 1981, against the City of Deerfield Beach, the City Commission and the individual members of the Commission.[6] Plaintiffs challenged the denial of DMC's application for an occupational license claiming both monetary and injunctive relief on the basis that the City's actions violated 42 U.S.C. § 1983 and the due process and equal protection clauses of the Fourteenth Amendment. On February 26, 1981, the district court held a hearing on plaintiffs' motion for a preliminary injunction pending trial on the merits. Plaintiffs introduced testimony of several city employees as well as various exhibits and documents. At the close of the hearing the district judge, in a brief oral statement from the bench, denied plaintiffs' motion for preliminary injunctive relief. The court found that plaintiffs had not carried their burden of proof in showing irreparable injury or the likelihood of success on the merits. The court further noted that the city had a public interest in "regulating land use within its boundaries" and that the city commissioners had "a concern" in heeding the wishes of their constituents. Plaintiffs appeal this ruling.[7]

6. The district court allowed the Archbishop of the Archdiocese of Miami to intervene as a party defendant pursuant to Federal Rule of Civil Procedure 24. The Archbishop presides over the operation of St. Ambrose Catholic Church, which is located on U. S. Highway 1 less than 1,000 feet from plaintiffs' building.

7. This court also denied plaintiffs' motion to supplement the record on appeal with depositions of four City Commission members taken

II.

The standard to be applied on the appeal of a denial of a preliminary injunction is abuse of discretion. *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 114 (5th Cir. 1979). The decision of the district court should be reviewed considering the four factors required for the granting of a preliminary injunction: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) a threatened injury to plaintiff that outweighs the potential harm the injunction causes the defendant, and (4) a finding that granting the preliminary injunction will not disserve the public interest. *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). In order to be entitled to a preliminary injunction plaintiffs must meet the burden of persuasion on all four of these factors. *Piedmont Heights Civic Club, Inc. v. Moreland*, 637 F.2d 430, 435 (5th Cir. 1981).

### A. Jus Tertii Standing

The district court in ruling on plaintiffs' motion found that plaintiffs had alleged sufficient injury in fact to establish standing to assert their own rights in challenging the defendants' actions. The court expressed doubt, however, that DMC had standing to assert the privacy rights of potential patients seeking abortions. The court was able to avoid resolution of the issue because it concluded that even considering the constitutional claims of pregnant women, plaintiffs had failed to demonstrate entitlement to injunctive relief. Because we are compelled to reverse the district court's denial of a preliminary injunction *if* the privacy rights of third parties in fact can be asserted by plaintiffs,[8] we must

after the preliminary injunction hearing. Plaintiffs' motion to expedite appeal was granted, but a motion for injunction pending final disposition on appeal was denied.

8. In a recent opinion, *Couf v. DeBlaker*, 652 F.2d 582 (5th Cir. 1981), this court stated that "[u]nless an ordinance or classification has the purpose or effect of injuring a protected group or restricting a protected activity, the Constitution places very few substantive limitations on

as a preliminary matter resolve whether a medical clinic which intends to provide abortion services may assert the constitutional claims of potential women patients in challenging a municipality's zoning actions.[9]

■ The aboriginal precept of *jus tertii* standing is that "one may not claim standing ... to vindicate the constitutional rights of some third party." *Barrows v. Jackson*, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1952). This limitation is not constitutionally mandated but a rule of self-restraint justified by a prudential concern that courts should not adjudicate constitutional rights unnecessarily and a belief that rights are most effectively asserted by those who can personally claim them. *Singleton v. Wulff*, 428 U.S. 106, 114, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976). In cases where these justifications are inapplicable, the general rule should be excepted and assertion of third party rights permitted. *Id.*

■ The concern that rights are most effectively asserted by those owning them is sufficiently eased to allow surrogate standing where there are circumstantial assurances of a litigant's effective advocacy of third party rights. *Barrows v. Jackson*,

346 U.S. at 258, 73 S.Ct. at 1036. Such assurances are provided where the relationship between the state enforced measure, the injury to the litigant and the purpose or effect of the measure naturally compels the litigant to fully and aggressively assert the constitutional claims of the third persons. *Id.* See Tribe, *American Constitutional Law* § 3–26 (1978). *Jus tertii* standing has been deemed sufficiently "necessary" where the result of litigation as a practical matter might impair the *ability* of third parties to exercise their constitutional rights, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), or where "it would be difficult if not impossible for persons whose rights are asserted to present their grievance before any court." *Barrows v. Jackson*, 346 U.S. at 257, 73 S.Ct. at 1035.

■ The application of these principles to the case at bar is controlled by *Carey v. Population Services International*, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977), and *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). *Craig* held that a vendor of 3.2% beer had standing to assert the equal protection claims of males between the ages of 18 to 21 in challenging a

local zoning." Where an owner is merely asserting an injury to property rights, the deference granted local zoning decisions is so great that it practically becomes a jurisdictional matter. *See, e. g., Gwinnett Venture v. Pruitt*, 491 F.2d 5 (5th Cir.) (en banc), *cert. denied*, 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974).
A zoning commission is a quasi-legislative body. It is not required to make findings of fact or state the reasons for the action taken. Its actions are entitled to a presumption of validity. The only question which federal district courts may consider is whether the action of the zoning commission is arbitrary or capricious, having no substantial relation to the general welfare.
*Id.* at 7. *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) ("[T]he courts generally have emphasized the breadth of municipal power to control land use and have sustained the regulation if it is rationally related to legitimate state concerns and does not deprive the owner of economically viable use of his property."). The record before us in the instant appeal indicates that the City Commission's actions may fail even this minimal test of arbitrariness. *Cf. Moore v. City of East Cleveland*,

431 U.S. 494, 520, 97 S.Ct. 1932, 1946, 52 L.Ed.2d 531 (1977) (Stevens, J., concurring). We emphasize, however, that this appeal is from the denial of a preliminary injunction, and our standard of review in this procedural context is limited. If a mere rational basis standard were employed in evaluating the evidence before the trial court, we would be unable to find that the trial judge *abused his discretion* in ruling that plaintiffs had failed to prove a substantial likelihood of success on the merits or irreparable injury.

9. At least four other circuits have faced this issue and have similarly granted standing to providers of abortion services to assert the rights of patients. *Women's Services v. Thone*, 483 F.Supp. 1022, 1030 n. 6 (D.Neb.1979, *aff'd*, 636 F.2d 207 (8th Cir. 1980); *Mahoning Women's Center v. Hunter*, 610 F.2d 456, 458 n. 2 (6th Cir. 1979); *Planned Parenthood v. Citizens for Community Action*, 558 F.2d 861, 865 n. 3 (8th Cir. 1977); *Friendship Medical Center, Ltd. v. Chicago Board of Health*, 505 F.2d 1141, 1148 (7th Cir. 1974). *See also Mobile Women's Medical Clinic v. Board of Commissioners*, 426 F.Supp. 331, 334–35 (S.D.Ala.1977).

statute that allowed the sale of 3.2% beer to 18 year old women but not to men under 21 years of age. In *Carey*, a North Carolina mail-order business of nonmedical contraceptive devices challenged the constitutionality of a New York statute that placed severe restrictions on the sale and advertisement of contraceptives within the state. The court held that in challenging the statute the out-of-state vendor could assert the rights of potential New York purchasers of contraceptives.

The relationship between the parties and the impact on third party rights presented in *Carey* and *Craig* are also present in the case at bar. The requirement of an occupational license and the denial of that license to DMC by Deerfield Beach officials directly affects plaintiffs' ability to provide abortion services to pregnant women. Plaintiffs here have the same options that were available to the vendees in *Craig* and *Carey* to "either heed the statutory [requirement], thereby incurring a direct economic injury . . . or to disobey the statutory command and suffer legal sanctions." 431 U.S. at 683, 97 S.Ct. at 2015, 429 U.S. at 194, 97 S.Ct. 455. DMC therefore falls within the category of "vendors and those in like positions [who] have been uniformly permitted to resist efforts at restricting their operations by acting as advocates for the rights of third parties who seek access to their market or function." 431 U.S. at 684, 97 S.Ct. 2015; 429 U.S. at 195, 97 S.Ct. at 455. We conclude that plaintiffs have standing to assert the claims of pregnant women whose privacy rights would be "diluted or

adversely affected" should defendants' actions remain unchallenged. *Griswold v. Connecticut*, 381 U.S. at 481, 85 S.Ct. at 1679.[10]

### B. *Likelihood of Success on the Merits.*

An evaluation of plaintiffs' likelihood of success on the merits entails two questions: the proper standard to be applied in evaluating DMC's claims; and the application of this standard to the facts presented in the record. A woman's right to decide whether to bear a child is encompassed by the "right of privacy, whether founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action . . . or in the Ninth Amendment's reservation of rights to the people." *Roe v. Wade*, 410 U.S. 113, 153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). State measures that infringe upon this right must be narrowly tailored to meet only the significant state interest being served. *Id.* at 155–56, 93 S.Ct. at 727–28. Evidence that a state measure in some incidental manner affects this right is not, however, always sufficient to evoke this high level of scrutiny. In *Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977), the Court considered whether a state could constitutionally deny medicaid benefits for nontherapeutic abortions. The Court in upholding the regulation against a rational basis standard stated that "*Roe v. Wade* . . . did not declare an unqualified 'constitutional right to an abortion' . . . . Rather the right protects the woman from *unduly burdensome*

---

**10.** Additionally, adjudication of the constitutional claims of potential patients is sufficiently necessary to allow *jus tertii* standing because assertion by a pregnant woman of her own rights would be beset by numerous practical difficulties. *Planned Parenthood v. Citizens for Community Action*, 558 F.2d 861, 865 n. 3 (8th Cir. 1977). A woman may be chilled in claiming her rights because of the public exposure which probably would result. *Singleton v. Wulff*, 428 U.S. at 117, 96 S.Ct. at 2875. Also, any individual woman's claim faces imminent mootness rendering it more difficult to assert. *Id.* Finally, potential patients of DMC may actually be denied a forum to challenge the City Commission's zoning actions because of the "case and controversy" requirement of Ar-

ticle III. In order to meet this jurisdictional prerequisite, a pregnant woman would have to demonstrate more than a " 'generalized grievance' shared by all or a large class of citizens." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). A woman challenging the City Commission's zoning action against DMC would have to show that she "personally would benefit in a tangible way by the court's intervention." *Id.* at 508, 95 S.Ct. at 2210. A woman seeking to challenge the denial of a conditional use permit to DMC, therefore, might be denied standing to assert her own rights should DMC enter bankruptcy or cease efforts to open a clinic in the City of Deerfield Beach.

interference with her freedom to decide whether to terminate her pregnancy." [emphasis added] *Id.* at 437, 97 S.Ct. at 2382. The application by the Court of a rational basis standard in *Maher* did not mark a "retreat from *Roe* or the cases applying it." *Id.* at 475, 97 S.Ct. at 2383. The distinction requiring a lower level of scrutiny from that employed in *Roe* was the "basic difference between direct state interference with a protected activity and state encouragement of an alternate activity consonant with legislative policy." *Id.; Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). A zoning decision that prevents the establishment of an abortion clinic in a particular locality constitutes affirmative governmental interference with the abortion decision rather than merely a determination not to remove restrictions on access to an abortion that already exist. *See Planned Parenthood v. Citizens for Community Action,* 558 F.2d 861 (8th Cir. 1977); *cf. Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (zoning ordinance restricting uses permitted in commercial zone held violative of First Amendment); *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (zoning ordinance limiting occupancy of dwelling to single family subjected to strict scrutiny). "[W]hen a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest." *Schad v. Borough of Mount Ephraim,* 452 U.S. at 68, 101 S.Ct. at 2182, 68 L.Ed.2d at 680.

The court below, relying on *West Side Women's Services, Inc. v. City of Cleveland,* 450 F.Supp. 796 (N.D.Ohio), *remanded,* 582 F.2d 1281 (6th Cir. 1978), *cert. denied,* 439 U.S. 983, 99 S.Ct. 572, 58 L.Ed.2d 654 (1979),[11] applied a rational basis test in con-

cluding that plaintiffs had not borne their burden of proving likelihood of success on the merits. In *West Side,* a physician and clinic corporation challenged a measure enacted by the Cleveland Ohio City Council barring abortion clinics from an area zoned for "local retail business." The District Court for the Northern District of Ohio, in denying plaintiff's motion for a preliminary injunction, interpreted the Supreme Court's decision in *Maher v. Roe* to require imposition of a strict scrutiny standard only where plaintiffs have demonstrated an "undue burden" on a fundamental right. The *West Side* court further concluded that an "undue burden" did not exist under the facts before it because abortion facilities were available in other areas of Cleveland. Similarly, the district court in the instant case based its evaluation of plaintiffs' claims on a finding that "the City of Deerfield Beach [was] not prohibiting abortions within the community, nor has it regulated abortion services other than to deny the plaintiffs an opportunity to operate an abortion clinic at this specific site...." Record at 114.

We believe that the court in *West Side,* and hence the lower court in the case at bar, misconstrued the Supreme Court's language in *Maher v. Roe.* The reference in *Maher* to "undue burden" concerns the ultimate question of the balance between the state proffered justifications for a measure and the burdens imposed by it as opposed to the level of scrutiny employed in making this evaluation. *See Charles v. Carey,* 627 F.2d 772 (7th Cir. 1980). "[W]hen the government intrudes on one of the liberties protected by the Due Process Clause of the Fourteenth Amendment, 'this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the

11. In its memorandum affirmance of the *West Side* decision, the Sixth Circuit noted that given "limited facts we are unable to reach even a tentative conclusion as to the ultimate merits of the case, and express no opinion thereon...." The *West Side* decision's precedential value is further weakened by the Sixth Circuit's decision in *Mahoning Women's Center v. Hunter,* 610 F.2d 456 (6th Cir. 1979), *vacated and remanded on other grounds,* 447 U.S. 918, 100 S.Ct. 3006, 65 L.Ed.2d 1110 (1980). The court in *Mahoning* struck down a city ordinance that imposed medical and building code restrictions on abortion clinics performing first trimester abortions. The requirements interfered with the fundamental right of privacy and were not justified by a compelling state interest.

challenged regulation.' " *Schad v. Borough of Mount Ephraim,* 452 U.S. at 71, 68 L.Ed. at 682, 101 S.Ct. 2184, *quoting, Moore v. City of East Cleveland,* 481 U.S. 494, 499, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1977).

▮ The court below erred in applying a mere rational basis standard in reviewing the City Commission's actions. "The application of an improper legal standard in determining the likelihood of success on the merits is never within the district court's discretion." *Charles v. Carey,* 627 F.2d at 776. If subjected to close scrutiny, the reasons offered by defendants for their denial of DMC's occupational license do not justify the resulting burdens on a pregnant woman's fundamental rights.

Despite the limited evidence in the record that other abortion facilities are located in "nearby" communities, the decision not to grant DMC an occupational license places a significant burden on a woman's abortion decision. The immediate impact of DMC's failure to obtain a conditional use permit is to forestall the availability of abortion facilities in Deerfield Beach for an indefinite period of time. Additionally, the City Commission's actions will discourage any future efforts by other enterprises to locate an abortion clinic within the city limits. Finally, it cannot seriously be disputed that a woman's deliberations over whether to have an abortion, and her ability to exercise her right to an abortion once that decision is made, would be adversely affected if abortion facilities were restricted to the most unattractive, inaccessible and inconvenient areas of a city.[12]

▮ Since the City Commission's action interferes with the exercise of a fundamental right, the defendants will be required to justify it at trial. *Bayou Landing, Ltd. v. Watts,* 563 F.2d 1172, 1175 (5th Cir. 1977). The motion adopted by the Commission denying DMC's application declared that the requested location threatened the "harmonious scheme of development" in the Highway Business District because there were no existing medical clinics "abutting single family residential property"; pregnancies would be terminated in the facility which was "in close proximity to a Catholic Church"; and the provision of abortion services in that area "would pose . . . a threat . . . to the health, mental health, safety, welfare and mental welfare of the citizens of that area." Record at 98.[13] The claimed justifications, in order to withstand scrutiny, must fit within a defined plan or scheme of logical development serving legitimate state ends. *See Schad v. Borough of Mount Ephraim,* 452 U.S. at 75, 101 S.Ct. at 2186, 68 L.Ed. at 683–84. Taken together and separately the justifications provided by the City Commission fail this standard. All three justifications are subject to the general observations that they are not listed within the City Code as grounds for denial of a conditional use permit, and they are irrelevant to the declared purpose of the Highway Business District. Additionally, they do not integrate the nature of the activity to be conducted within the facility with any typical zoning concerns such as traffic, noise or provision of municipal services.

12. A three-judge district court in *Arnold v. Sendak,* 416 F.Supp. 22 (S.D.Ind.), *aff'd* 429 U.S. 968, 97 S.Ct. 476, 50 L.Ed.2d 579 (1976) implicitly recognized the burden imposed by the limitation of abortion facilities to certain locations when it struck down a statute requiring that all abortions, including those during the first trimester of pregnancy, be performed in a hospital.

13. A fourth basis argued on appeal for the denial of DMC's application, that the abortion procedure is "major" as opposed to "minor" surgery, was not given by the City Commission as a ground for its decision. The major/minor surgery distinction also is not indicated in the City Code as a basis for denial of an occupational license. The apparent rationale for the distinction as may be inferred from statements in the record is that patients undergoing "major" surgery may on rare occasions be required to stay at the medical facility overnight. The merit of this claim can best be assessed in light of the permitted uses allowed by Deerfield Beach in the Highway Business District. *See Schad v. City of Mount Ephraim,* 452 U.S. at 76, 101 S.Ct. at 2186, 68 L.Ed.2d at 684. In view of the inclusion of the operation of a motel as a permitted use within the Highway Business District the concern for overnight patients at DMC is of dubious validity.

The first claimed justification, the proximity of *single* family residences, is difficult to reconcile with the fact that the length of the Highway Business District borders areas zoned for single and multi-family residences. The City Commission is careful to distinguish DMC from other medical facilities already located in the District by emphasizing that DMC would be the only facility to border *single* family residences as opposed to *multi*-family residences. This court is unable to hypothesize, and the record is void of, any legitimate basis for such a distinction.

Second, the Commission relied on the proximity of the Catholic Church to DMC's facility. The record demonstrates that this justification is based on the church's religious objections to the nature of the service to be performed within the DMC facility. In fact, the Archbishop of the Archdiocese of Miami in a separate brief as defendant-intervenor argues that "the furnishing of abortion services within less than one thousand feet (1,000') of a Catholic Church whose members are opposed to abortion on *religious* and *philosophical* grounds would deeply offend the spiritual values of the clergy and parishioners of the church...." [emphasis added].[14] A legitimate state interest does not exist in protecting a church from suffering intra-zoning district neighbors whose activities it opposes on religious grounds. *See Epperson v. Arkansas*, 393 U.S. 97, 107, 89 S.Ct. 266, 272, 21 L.Ed.2d 228 (1968) (The Court struck down a state statute that prohibited the teaching of evolution, noting that "the state has no legitimate interest in protecting any or all religions from views distasteful to them....").

Defendants argue that *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1946) permits the City Commission to proscribe the location of specified uses within a certain distance from each other. While *Young* upheld a zoning ordinance proscribing the location of adult theatres within 1000 feet of other "regulated uses", the Court emphasized that evidence was heard by the Detroit Common Council indicating the deteriorating effect on a neighborhood of the concentration of adult theatres in limited areas. The Court's reliance in *Young* on this evidence illustrates that zoning regulations, even those resulting in only incidental burdens on constitutional interests, must be justified by a demonstrable external impact arising from activities conducted within the regulated facility. *See also Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). The City Commission of Deerfield Beach heard no testimony, prior to denying DMC's occupational license that, because of the proximity of a church, the provision of abortion services at a facility in the Highway Business District would promote the physical deterioration of the district or otherwise frustrate its declared purpose.[15]

The final justification proffered by the City Commission, the general concern that the abortion facility would pose a threat to the "health and welfare" of the citizens of the area, is simply too vague and unsubstantiated by the record to justify the burdens imposed on the constitutional right of privacy. *See Interstate Circuit v. Dallas*, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); *Bayou Landing, Ltd. v. Watts*, 585 F.2d 1172, 1175 (5th Cir. 1977). Such amorphous standards would permit arbitrary governmental action aimed at the suppression of protected activity "solely because the residents of the community disapproved

---

**14.** The absence of any legitimate ground for this justification is further indicated by the presence of a "Family Medical and Surgery" building on the lot adjoining the Catholic Church. Also, there is testimony in the record that the DMC facility is not even visible from the Catholic Church.

**15.** We note that the City Code is very specific in providing grounds for suspension or revocation of an occupation license. In order for such a revocation to occur the City Commission must find "the accumulating of refuse", "repeated incidents of violence", "excessive noise" or the existence "of a fire hazard" where these conditions are "caused by the operation of the subject business." Deerfield Beach City Code §§ 18–25.

of the [nature of the activity] or were offended by it." *Id.* at 1176–77.[16]

#### C. *Irreparable Injury.*

In order for plaintiffs to be granted preliminary injunctive relief they were required to show that there was a substantial likelihood that they would suffer irreparable injury if an injunction were not granted. An injury is "irreparable" only if it cannot be undone through monetary remedies. *Spiegel v. City of Houston,* 636 F.2d 997 (5th Cir. 1981); *Parker v. Dunlop,* 517 F.2d 785, 787 (5th Cir. 1975). It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *Johnson v. Bergland,* 586 F.2d 993 (4th Cir. 1978); *Citizens for a Better Environment v. City of Park Ridge,* 567 F.2d 689 (7th Cir. 1975). Similarly the right of privacy must be carefully guarded for once an infringement has occurred it cannot be undone by monetary relief. *Kennan v. Nichol,* 326 F.Supp. 613, 616 (W.D.Wis.1971), *aff'd mem.,* 404 U.S. 1055, 92 S.Ct. 735, 30 L.Ed.2d 743 (1972) ("to withhold a temporary restraining order is to permit the [constitutional right of privacy] to be lost irreparably with respect to the physician and those women for whom he would otherwise perform the operation in the meantime."); *see Planned Parenthood v. Citizens for Community Action,* 558 F.2d at 867.

The district court misapplied the controlling law to the facts before it, and thereby abused its discretion, when finding no irreparable injury to pregnant womens' rights of privacy because "other abortion facilities nearby [could] provide services to those women." Record at 113. We have already determined that the constitutional right of privacy is "either threatened or in fact being impaired", and this conclusion mandates a finding of irreparable injury. *Elrod v. Burns,* 427 U.S. at 373, 96 S.Ct. at 2689. That the injury resulting from defendants' actions is minimized by the presence of other abortion facilities does not eliminate or render harmless the potential continuing constitutional violation of a fundamental right. *See Carey v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).[17]

#### D. *Remaining Requirements for Injunctive Relief.*

Because of the nature of the constitutional analysis involved in evaluating plaintiffs' likelihood of success on the merits, we have already been required to conclude that the justifications offered for defendants' actions do not outweigh the harm to plaintiffs and those third parties whose rights plaintiffs are allowed to assert. Likewise, as to the concern for disservice of the public interest, we note simply that any public interest in allowing zoning officials discretion in developing and administering zoning plans does not extend so far as to allow arbitrary and capricious actions that

---

**16.** At oral argument counsel for defendants, after repeated proding by the bench, attempted to substantiate this justification by noting that children would be walking past the facility on the way to school. Specifically, the concern was that "for a very small sum of money [the school children] could have access to the abortion operation * * * because Florida has no law [restricting the availability of abortion services to minors]." Viewed most favorably to defendants this statement is an admission that the City Commission's denial of DMC's application is an action not "narrowly tailored to meet the claimed justification." *See Bayou Landing, Ltd. v. Watts,* 563 F.2d at 1176. At worst the argument is an admission by defend-

ants' counsel that the City Commission impermissibly sought to interfere with the abortion decision by restricting abortion facilities to less accessible areas so that knowledge of the availability of abortion services in Deerfield Beach would be limited.

**17.** The court below found that plaintiffs had "an adequate remedy at law for any financial damage they may suffer, and any injury to the Plaintiffs' professional reputation and goodwill is entirely speculative . . . since the clinic yet hasn't operated." After carefully reviewing the record, we are unable to conclude that the finding constituted an abuse of discretion.

interfere with the exercise of fundamental rights. *See Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Buchanan v. Warley,* 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149 (1917); *Bayou Landing, Ltd. v. Watts,* 563 F.2d 1172 (5th Cir. 1977); *Planned Parenthood v. Citizens for Community Action,* 558 F.2d 861 (8th Cir. 1977).

### III.

██ Plaintiffs have also requested that we direct the court below to award interim litigations costs and attorney's fees under the Civil Rights Attorneys' Fee Award Act of 1976, 42 U.S.C. § 1988. The Act provides:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this Title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

As set forth in the Act, an award of attorney's fees is only appropriate to a "prevailing party." In *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), the Court, after reviewing the legislative history of the Act, stated that "Congress contemplated the award of fees *pendente lite* * * * to a party who has established his entitlement to some relief on his claims, either in the trial court or on appeal." *Id.* at 757, 100 S.Ct. at 1989. Plaintiffs, by obtaining a preliminary injunction on appeal, qualify as "prevailing parties" under this standard. *See Williams v. Alioto,* 625 F.2d 845 (9th Cir. 1980), *cert. denied,* 450 U.S. 1012, 101 S.Ct. 1723, 68

L.Ed.2d 213 (1981); *see also Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). The preliminary injunction allows plaintiffs to begin operation of their abortion clinic, and thus they have at least partially achieved the result sought in filing this action. *See Sethy v. Alameda County Water District,* 602 F.2d 894, 897–98 (9th Cir. 1979).

Since plaintiffs are "prevailing parties" within the contemplation of section 1988, the award of attorney's fees is squarely governed by this court's decision in *Aware Woman Clinic v. City of Cocoa Beach,* 629 F.2d 1146 (5th Cir. 1980). In *Aware* this court reversed the district court's denial of attorney's fees to plaintiffs who had successfully challenged a municipal ordinance providing, *inter alia,* for the licensing and regulation of abortion clinics. We noted generally that section 1988 applies to all types of section 1983 actions and "[a]bsent 'special circumstances', [citations omitted] fees should be awarded." *Id.* at 1149, *quoting, New York Gaslight Club v. Carey,* 449 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). This court then held that, in view of *Mahoning Women's Center v. Hunter,* 447 U.S. 918, 100 S.Ct. 3006, 65 L.Ed.2d 1110 (1980), "the constitutionality of a city ordinance restricting first trimester facilities ... is not by itself a special circumstance justifying denial of a fee award." 629 F.2d at 1149.[18] We can find no "special circumstances" compelling us to employ our discretion and deny attorney's fees. This action is therefore remanded to the district court with the direction that plaintiffs be awarded reasonable attorney's fees incurred in the pursuit of this litigation up to the time of this decision.[19]

REVERSED and REMANDED.

---

**18.** Our decision to award attorney's fees is further supported by this court's decision in *Universal Amusement Co., Inc. v. Hofheinz,* 616 F.2d 202 (1980). In *Hofheinz,* the district court was directed to award attorney's fees under section 1988 after it found unconstitutional a city ordinance regulating the location of adult commercial establishments and ordered a permanent injunction.

**19.** We acknowledge that the award of attorney's fees in the instant case conflicts with the decision of the Eighth Circuit in *Planned Parenthood v. Citizens for Community Action,* 558 F.2d 971 (8th Cir. 1977). We respectfully decline to follow that decision in light of recent case authority, both in this circuit and from the Supreme Court, most notably *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).