853 F.2d 347
 58 Fair Empl.Prac.Cas. 1879,
47 Empl. Prac. Dec. P 38,239
BLACK ASSOCIATION OF NEW ORLEANS FIRE FIGHTERS (BANOFF),
Plaintiffs-Appellees,
v.
The CITY OF NEW ORLEANS, LOUISIANA, A Municipal Corp.,
Sidney Barthelemy, In His Capacity as Mayor of New
Orleans, et al., Defendant-Appellees
v.
NEW ORLEANS FIREFIGHTERS ASSOCIATION, LOCAL # 632,
Defendant-Appellant.
 No. 88-3098.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 25, 1988.
 
 Gilbert R. Buras, Jr., Metairie, La., for defendant-appellant.
 Ralph D. Dwyer, Jr., New Orleans, La., for N.O. Civil Service Comm.
 Okla Jones, II, City Atty., George Blair, III, New Orleans, La., for City of New Orleans, Barthelemy, McCrossen.
 Judith Reed, New York City, Marc H. Morial, New Orleans, La., for Black Assoc.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before THORNBERRY, WILLIAMS and SMITH, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge:
 
 
 1
 New Orleans Firefighters Association, Local no. 632, appeals the district court's denial of its motion asking the court to vacate an earlier order restraining the City from promoting firefighters to the rank of captain pending judgment on appellees' civil rights suit alleging discriminatory employment practices. We find that the union had standing to seek modification of the restraining order, and construe the restraining order as injunctive in nature. We reverse the district court's order denying appellant's motion to vacate the earlier restraining order, and remand for a hearing on the earlier order.
 
 I.
 
 2
 In August, 1985, the New Orleans City Civil Service Commission (the Commission) administered a Fire Captain Examination which it had prepared, it contends, in accordance with EEOC guidelines. It asserts that the examination was prepared at considerable expense and with the assistance of qualified expert consultants. In January, 1986, the Commission prepared a register of Fire Department employees eligible for promotion to the rank of captain, based on the results of the examination. The register listed 179 persons who had passed, ranking their names according to scores and seniority. The list included 20 blacks, concentrated mainly at the bottom of the register. Only one black would have been appointed to fill any of the 47 captain vacancies at that time based on the register rankings.
 
 
 3
 On April 10 or 11,[1] 1986, the Black Association of New Orleans Firefighters and four black members of the New Orleans Fire Department (appellees) filed suit against the City of New Orleans and others, including the Commission and Local 632[2] (the union) under 42 U.S.C. Secs. 2000e et seq. [Title VII],[3] and 42 U.S.C. Secs. 1981, 1982, and 1983, alleging violation of their Thirteenth and Fourteenth Amendment rights. In their complaint, appellees contended that use of the Fire Captain Promotional Examination and the promotion register created pursuant to it impacted disparately and adversely on black applicants for promotion. Appellees also sought a temporary restraining order and preliminary injunction enjoining use of the register and the promotion of any firefighters to the rank of captain. The district court denied appellees' application for a TRO in a handwritten order dated 11:35 A.M., April 11, 1986.[4]
 
 
 4
 Apparently without first notifying the union or the Commission, appellees then presented to the court for its approval a document entitled "ORDER" which they had drafted. The court signed this ORDER on May 8, 1986.[5] The ORDER stated:
 
 
 5
 IT IS STIPULATED AND AGREED between the plaintiffs and defendants, City of New Orleans, Ernest Morial, William McCrossen, and the New Orleans City Council and the Court hereby ORDERS that:
 
 
 6
 1. The defendants, the City of New Orleans, William McCrossen, Superintendant of the Fire Department, Ernest N. Morial, the Mayor of the City of New Orleans, the Council of the City of New Orleans, and any other employees or agents acting on their behalf, are hereby restrained from making any further appointments, promotions, or selections to the position of Fire Captain and are prohibited from utilizing the January 27, 1986 Fire Captains' promotional register compiled by the New Orleans Civil Service Commission, until such time as the trial on the merits is had.
 
 
 7
 2. It is further provided that any party may seek further orders of the court granting relief from this order upon good cause shown. This order shall issue as of April 11, 1986, and shall be continued in force until further orders of this court.
 
 
 8
 The ORDER also recites that it resulted from a "hearing on an application for a temporary restraining order on April 11, 1986," and that appellant union and the Commission were "unrepresented" at that hearing.[6] The docket does not reflect that any hearing was held on that date, and appellant union and the Commission aver that they were not notified about any such hearing. There is no record evidence that they saw the language contained in the draft order prior to May 8, 1986, and no evidence as to when it first came to their attention afterwards. There is no record evidence that the ORDER was ever served on the union or the Commission. Neither the union nor the Commission appealed the ORDER.
 
 
 9
 Some eighteen months later, on December 11, 1987, the union filed a motion in the district court to vacate the May 8, 1986 ORDER on various grounds.[7] In its brief, the union states that its 1987 motion had argued that the ORDER was tantamount to a preliminary injunction and as such it was deficient in several respects mandated by Rule 65, Fed.R.Civ.P. In support of its 1987 motion, the union submitted an affidavit by the City's Fire Administrator which stated:
 
 
 10
 [T]he Department of Fire anticipates that within the next 90 days seven vacancies will be available for promotional opportunities and that after exhaustion of the list of demotees eligible for re-promotion, such vacancies would be filled from the promotional register established by the [Commission] on January 27, 1986, absent any court ordered restraint on the use of said promotional register.
 
 
 11
 Following status conference, by order filed February 4, 1988, the district court denied the union's motion to vacate the ORDER. The ORDER has now been in effect more than two years.[8] As of the time of oral argument, June 8, 1988, no date had been set for appellees' suit on the merits, nor have we been advised that such hearing has since been docketed. The union timely appealed the court's February 4, 1988 order.
 
 II.
 
 12
 On appeal, appellant union contends (1) that the ORDER is injunctive in nature, and not a consent decree; (2) that the ORDER was entered without adequate notice to interested parties; (3) that by its continuing effect, the ORDER is a preliminary injunction issued without notice of hearing and without appellees' having been required to bear the requisite burden of proof; and (4) that the court erred in holding that the union lacked standing to challenge the ORDER; In its brief,[9] the Commission argues that the ORDER was in effect a preliminary injunction and as such was procedurally defective, having been issued without hearing, and in several other respects was noncompliant with Rule 65(b), Fed.R.Civ.P. The union and the Commission[10] ask this Court to vacate the 1986 ORDER.
 
 
 13
 Appellees contend that this Court lacks jurisdiction to review the ORDER inasmuch as neither the union nor the Commission timely appealed it pursuant to Rule 4, Fed.R.App.P., which requires that appeals be filed within 30 days after the entry of judgment. Appellees also argue that the court's February 4, 1988 order is neither a final order within Rule 54(b) nor an appealable interlocutory order within 28 U.S.C. Sec. 1292(a) and that this Court therefore lacks jurisdiction to review it. Additionally, they urge that in any event the district court acted within its discretion both in issuing the ORDER which was agreed to by the parties and merely maintained the status quo pending trial, and in denying appellant's motion to vacate the ORDER which had been entered 18 months earlier.
 
 
 14
 Notwithstanding the several peculiar and seemingly inexplicable procedures, omissions, and contradictions which pervade the record, the legal issues are relatively straightforward. We begin with certain preliminary questions.
 
 
 15
 Appellant union[11] and appellees, in an "Agreed Statement as to Record on Appeal,"[12] stipulate that the union here appeals the denial in 1988 of its motion to vacate the district court's ORDER dated May 8, 1986.[13]
 
 
 16
 The 1988 denial itself stated no grounds. Styled as a "Minute Entry," it stated simply, "The Motion to Vacate the order of May 8, 1986, is denied." But in their "Agreed Statement" appellant union, appellees, and the other parties stipulate that the court denied the union's motion to vacate the 1986 ORDER "on grounds that Local 632, mover, had no standing to challenge the Order." In addition, appellees argue that the court's February 4, 1988 order resulted in a holding "that the May 8th order had been entered pursuant to stipulation and agreement." Appellant, however, contends that the 1986 ORDER was a defective temporary or preliminary injunction, not a consent decree.
 
 
 17
 The principal issue before us is whether the appellant union had standing to challenge the 1986 ORDER. In addressing this issue, we must necessarily resolve the question whether the ORDER was in the nature of an injunction, or a consent decree. Because appellees question it, we also address our jurisdiction.
 
 A. Appellant Union's Standing
 
 18
 The 1986 ORDER, in terms, provided that "any party may seek further order of the Court granting relief from this order upon good cause shown." Appellant union and the Commission were named as parties in appellees' suit filed April 10 or 11, 1986. Moreover, the union is named as a defendant in all of appellees' record filings in connection with this suit, including their motion for a TRO and preliminary injunction. We conclude that appellant union is a "party" within the meaning of that term as used in the ORDER. Moreover, appellant union submitted affidavits (with its December 11 motion) from eleven of the first twelve firefighters eligible for promotion, all members of Local 632, stating that their interests were adequately represented by it. The Fire Administrator's affidavit avers that but for the ORDER's prohibition, promotions would be made from the register. The union points out that the register list is due to expire on January 27, 1989, and contends that if those presently eligible under it are not promoted before then, they will be denied all opportunity for advancement for several years. The union also relates that it raised the impact of the ORDER on the collective bargaining agreement to which it is a party in the memorandum of law accompanying its Dec. 11 motion.[14] The union's contentions clearly allege actual or threatened injury caused by another party, which is likely to be cured by the relief requested. Allen v. Wright, 468 U.S. 737, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); New Orleans Public Service, Inc. v. Council of the City of New Orleans, 833 F.2d 583, 588 (5th Cir.1987). We hold that the union as a party had standing to come into court to seek a change of, or relief from, the 1986 ORDER.
 
 
 19
 B. TRO, preliminary injunction, or consent decree?
 
 
 20
 According to appellees' brief, the court's February 4, 1988 order held "that the May 8th order had been entered pursuant to stipulation and agreement." This statement apparently is meant to suggest that the district court held that the ORDER was in effect a consent decree, and as such, was not subject to the provisions of Rule 65, Fed.R.Civ.P., regarding notice, hearing, duration, security and other requirements. Moreover, a judicial consent decree which is properly entered, effectively terminating the lawsuit to which it pertains, cannot be collaterally attacked. Ho v. Martin Marietta Corp., 845 F.2d 545, 548 (5th Cir.1988). We must therefore ascertain whether the 1986 ORDER was a consent decree or was in the nature of an injunction.
 
 
 21
 Although the 1986 ORDER bears some resemblance to a consent decree, having been signed by counsel for appellees and the then-City Attorney, its terms and function are clearly those of a temporary restraining order or preliminary injunction. All appellees' filings in preparation for the April 11, 1986 hearing at which the purported agreement supposedly was presented to the court refer to their motion for a "temporary restraining order" or "preliminary injunction." The affidavit by attorney Lewis states that he was assigned the task of informing the appellant union and the Commission that a conference was pending "to discuss the issuance of a Temporary Restraining Order." (Emphasis supplied). There is no evidence at all that the union or the Commission were informed that appellees or other parties were planning to ask the court to issue a consent decree.[15]
 
 
 22
 The ORDER itself recites that it derived from "a hearing on an application for a temporary restraining order," and in terms it states that the City and its agents "are hereby restrained from" taking the enumerated actions. The ORDER's effect has been to do just that: to prevent use of the register and promotion of any otherwise eligible firefighters to certain rank. At oral argument, appellees conceded that the 1986 ORDER was "actually very much like a TRO." We must hold that the 1986 ORDER was in the nature of a TRO or preliminary injunction,[16] not a consent decree. We do not here undertake to determine its validity. We consider it further only in connection with the question as to our jurisdiction with respect to reviewing the district court's 1988 order.
 
 
 23
 C. This court's jurisdiction as to the February 4, 1988 order
 
 
 24
 The union's appeal of the district court's February 4th order, invokes this Court's jurisdiction under 28 U.S.C. Sec. 1292(a)(1). Appellees contend that the February 4th order was not an interlocutory order appealable under this section, and that this Court therefore lacks jurisdiction to hear the appeal. By its terms, Sec. 1292(a)(1) states:
 
 
 25
 (a) The courts of appeals shall have jurisdiction of appeals from:
 
 
 26
 (1) Interlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.
 
 
 27
 Appellees argue that Sec. 1292(a) is to be construed narrowly, and that under Carson v. American Brands, Inc., 450 U.S. 79, 101 S.Ct. 993, 996-97, 67 L.Ed.2d 59 (1981), the union may not invoke this jurisdictional basis because it could not show that its members would be "irreparably harmed." Appellees contend that the only harm union members would experience is monetary, that is, "the loss in salary from not receiving a promotion at an earlier date."[17]
 
 
 28
 Carson, however, does not require parties to demonstrate "irreparable harm" in order to invoke appellate jurisdiction under Sec. 1292(a). Rather, Carson requires only a showing that the challenged interlocutory order "might have a 'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged' only by immediate appeal." Id. l01 S.Ct. at 997. It is clear that several of the persons[18] appellant union represents would suffer serious consequences if the current register under which they are eligible for promotion expires before trial on the merits. They would suffer more than monetary loss subject to legal remedies. Promotion also confers non-monetary distinction and perquisites. See Carson, 101 S.Ct. at 999 n. 16 and accompanying text. Particularly given the fact that appellees did not post security as required under Rule 65(c), Fed.R.Civ.P., there is virtually no likelihood that the union or those it represents would recover monetary remedies for lost income even if some of the firefighters who are eligible under the expiring register are eventually promoted under some other register or plan, or if they prevail in the eventual litigation. In any event, it is clear that the persons the union represents may experience serious consequences as a result of the ORDER's remaining in effect. Moreover, because a hearing on appellees' original complaint has not yet even been scheduled, the ORDER can be challenged effectively only by immediate appeal. Carson therefore does not negate this Court's jurisdiction to hear the present appeal.
 
 
 29
 Appellees also argue that the February 4th order was unappealable because there were no changes in circumstances since the May 8, 1986 ORDER which make its continuation inequitable. Ordinarily, the purpose of a motion to modify an injunction is to demonstrate that changed circumstances make the continuation of the order inequitable, and such a motion does not generally require the trial court to permit relitigation of its original injunctive order. Merrell-National Laboratories, Inc. v. Zenith Laboratories, Inc., 579 F.2d 786, 791 (3d Cir.1978). In special circumstances, however, the scope of appellate review may reach the underlying injunctions. Id. See Godinez v. Lane, 733 F.2d 1250, 1255-57 (7th Cir.1984); Fern v. Thorp Public School, 532 F.2d 1120, 1130 (7th Cir.1976). In particular, a federal appellate court "may make an exception to the general rule, and decide to review the merits of the underlying order, when it perceives a substantial abuse of discretion or when the new issues raised on reconsideration are inextricably intertwined with the merits of the underlying order." Sierra On-Line, Inc. v. Software, Inc., 739 F.2d 1415, 1419 (9th Cir.1984); Cerro Metal Products, Inc. v. Marshall, 620 F.2d 964, 974 (3d Cir.1980).
 
 
 30
 The district court may well have abused or exceeded its discretion in issuing the 1986 ORDER.[19] We do not so determine at this time, however. Neither the union nor any of the other parties, of course, would be bound by the ORDER if it is no longer, or never was, legally effective. Because the court's 1988 order held that the union did not have standing, the union did not have a hearing and did not have any opportunity to advance its claim as to the merits of the underlying 1986 ORDER. The court has not had the benefit of considering the contentions the union was entitled to present. It would, therefore, be premature for us to reach the merits of the underlying ORDER on this appeal. We therefore shall remand to the district court. Appellant union, even though a party in the case, thus far has had no opportunity to challenge the 1986 ORDER upon the merits, just as it had no opportunity to participate in the formulation of the 1986 ORDER. Remand will afford the union opportunity to challenge the order.
 
 
 31
 Because the district court found that the union lacked standing to seek to modify the 1986 ORDER, the union was not a participant in the 1988 proceedings, and did not have opportunity to present to the court its contention that circumstances had changed since the 1986 ORDER which make its continuation inequitable. We have found that the union does have standing to seek modification of the 1986 ORDER. The remand to the district court will enable a hearing on the union's motion for modification or vacation of the 1986 ORDER.
 
 
 32
 Finally, appellees contend that the February 1988 order is not appealable because it merely served to preserve the status quo during the pending litigation. Jones v. Diamond, 519 F.2d 1090, 1095 (5th Cir.1975). As noted supra, given the likelihood that the register will expire before appellees' suit is ever litigated, the effect of the 1986 ORDER and the court's subsequent, February 1988 order was not simply to preserve the status quo, but to discard the register and indefinitely bar those eligible under it from being promoted. Jones is inapplicable here.
 
 III.
 
 33
 The union and those it represents clearly have been and are adversely affected by the ORDER. The union and these persons are parties under terms of the ORDER and also adverse parties for purposes of Rule 65. They are thus in a position to seek relief from or modification of the ORDER. Since persons the union represents may be seriously harmed in consequence of it, the union had standing to appeal the district court's February 4, 1988 order in this Court under 28 U.S.C. Sec. 1292(a).
 
 
 34
 On remand, appellant union has a right to a hearing and full participation in its challenge to the 1986 ORDER on the ground that it was not properly issued in the first place and on the ground that circumstances since issuance have changed.
 
 
 35
 REVERSED AND REMANDED.
 
 
 
 [1]
 It is unclear from the record whether appellees' suit and motion for a restraining order were filed on April 10 or on April 11
 
 
 [2]
 The New Orleans Firefighters Association Local 632, AFL-CIO, is an unincorporated labor organization with 681 members. It is the collective bargaining agent recognized by the City for representing some 750 firefighters within the collective bargaining unit. Under the collective bargaining agreement, the City agreed to process promotions on a timely basis
 
 
 [3]
 Appellees' original complaint mentions that the EEOC had not yet issued them a "Notice of Right to Sue." Appellees sought to certify the City's black firemen as a class. Action on class certification is still pending
 
 
 [4]
 The copy of this order found in the record bears no indication of having been filed, and no filing date. The docket for April 10, 1986, contains the entry: "Pltfs' Mtn of Temporary Restraining Order and Preliminary Injunction is DENIED."
 
 
 [5]
 The ORDER was submitted and signed by Marc Morial and Vincent Blanson/lc, counsel for appellees, and Salvador Anzelmo, City Attorney for the City of New Orleans. It listed as those present: Marc Morial, Vincent Blanson, and William E. Lewis, as counsel for appellees, Salvador Anzelmo, City Attorney, Ernest Morial "in his capacity as Mayor of the City of New Orleans," William McCrossen, "in his capacity as Superintendent of the New Orleans Fire Department," and "Council of the City of New Orleans" (sic )
 
 
 [6]
 An affidavit by William E. Lewis dated January 27, 1988 and filed February 8, 1988, states that a conference with the presiding judge on "this matter" was scheduled for 7:30 A.M. on April 11, 1986, and that he, along with co-counsel Vincent P. Blanson and Marc Morial, met the judge at his chambers at 7:30 A.M. on April 11, 1986, and that the judge instructed them to inform appellants of the suit and the request for a TRO "and to advise them of a conference with the judge to be held later that day to consider the requested relief." Lewis states that he was assigned the task of informing appellants "that the judge in this matter required their presence at conference to discuss the issuance of a Temporary Restraining Order," and that he "specifically spoke to: Mike Doyle, Civil Service Commission, Salvador Anzelmo, City of New Orleans, and William Sanchez, President of the Union," and "advised all parties that their presence ... was required at the above-mentioned conference." The affidavit does not indicate when this second conference was scheduled to be held, whether it was held, when Lewis notified the other parties or their respresentatives about it, or what he told them the conference was to consider
 In their brief, appellees state that the City agreed "[a]lmost one month later" [following April 10, 1986] "that it would make no further promotions until trial on the merits." Apparently appellees do not contend that there actually was a second conference or hearing on April 11, 1986.
 
 
 [7]
 The union's December 11, 1987 motion is not included in the record on appeal. According to the "Agreed Statement," the union had "moved to vacate the May 8, 1986 order on grounds that its continuing effect rendered it either a superextended Temporary Restraining Order or a preliminary injunction entered without a proper evidentiary showing by the plaintiffs."
 
 
 [8]
 The ORDER, signed May 8, 1986, carried an effective date of April 11, 1986
 
 
 [9]
 The Commission does not address the matter of its standing, and makes no mention of the union's December 11th motion or the district court's February 4th order
 
 
 [10]
 The City of New Orleans, its Mayor and other entities associated with it (except for the Commission) are not involved in this appeal
 
 
 [11]
 We briefly note the status of the Commission on this appeal. On April 14, 1988, the Commission filed an appeal brief in this Court captioned "Original Brief of Defendant Civil Service Commission of the City of New Orleans." According to the "Agreed Statement," the Commission had "supported" the union's motion to vacate the 1986 ORDER. Appellant union and appellees both state on appeal that the Commission had "joined in" the motion to vacate. The union's brief adds that the court's February 4, 1988 order held that neither the union nor the Commission had standing to move to vacate the 1986 ORDER. Appellees state that the Commission also "has joined in the instant appeal." Notwithstanding these several indications that the Commission might be a party on this appeal, we find that the record indicates that only the union appeal of the 1988 order. In an order filed March 23, 1988, this Court granted the Commission's motion "for permission to file a brief in support of" appellant union. We therefore determine that the Commission's status on this appeal is that of amicus curiae, not that of an appellant proper
 
 
 [12]
 The "Agreed Statement" was filed with this Court on March 15, 1988. It was signed by counsel for appellees, the union, the Commission and for the City of New Orleans and its Mayor and Fire Superintendent
 
 
 [13]
 To clear away any uncertainty, we here state that we do not now review the validity or merits of the 1986 ORDER, as such
 
 
 [14]
 The union's memorandum of law is not included in the record on appeal
 
 
 [15]
 We do not undertake to determine whether the 1986 ORDER would have been valid if issued as a consent decree. We observe in passing, however, that a consent decree may not be issued if it affects third parties who do not agree to it, much less, parties in the case who had no opportunity to disagree with it. Local Number 93, International Ass'n of Firefighters, AFL-CIO v. City of Cleveland, 478 U.S. 501, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405 (1986); Ho, 845 F.2d at 548 n. 4
 
 
 [16]
 We use the expression "in the nature of" advisedly. Although preliminary injunctions may not be issued without notice to adverse parties, Rule 65(a)(1), Fed.R.Civ.P., temporary restraining orders may be so issued, under certain circumstances, when requisite procedures are observed. Rule 65(b). The 1986 ORDER evidently was issued without such notice. Thus it could not initially have been a preliminary injunction. On the other hand, in the absence of further prescribed proceedings, a TRO expires not later than ten days after its entry. Id. No such further proceedings were held. The 1986 ORDER, however, stated that it was to remain in effect indefinitely, "until further orders from this court." What exactly the order may have been is unclear. The principal alternatives as to its nature are as follows: it was either a TRO or preliminary injunction issued in contravention of Rule 65, and thus invalid or void ab initio; or it was a valid TRO which either expired ten days after entry or somehow transmogrified itself into a preliminary or permanent injunction, notwithstanding the requirements of Rule 65. We do not attempt here to identify it more precisely. On remand, the parties may try to do so
 
 
 [17]
 Appellees cite Deerfield Medical Center v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir.1981) for the proposition that an injury is not "irreparable" if it can be undone through monetary remedies
 
 
 [18]
 There is record evidence that the 47 eligible firemen (46 white, 1 black) ranking highest on the promotion register were to have been promoted at a ceremony scheduled for the evening of April 11, 1986. The May 8, 1986 ORDER (which was to "issue" April 11, 1986) begins by stating "[t]his matter came for hearing on an application for a temporary restraining order on April 11, 1986 to enjoin the promotion of 47 fire fighters to the position of Fire Captain ..." At oral argument, appellees' counsel stated that the 47 eligible firemen were promoted to Fire Captain on April 11, 1986. There is no record evidence as to whether the ceremony was held or the promotions were made
 
 
 [19]
 For instance, although the 1986 ORDER was initially, if anything, a temporary restraining order, it failed to meet several requirements of Rule 65(b), Fed.R.Civ.P. The applicants' counsel failed to certify to the court timely and in writing the efforts which had been made to give notice to all the adverse parties and the reasons supporting their claim that notice should not have been required. Id. The order did not define the injury and state why it was irreparable and why the order should be granted without notice. Id. Moreover, Rule 65(c) specifically states: "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." There is no record evidence that security was ever posted