**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 24, 2007**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-20667
_____

KAY STALEY,

                                        Plaintiff - Appellee,

                        versus

HARRIS COUNTY, TEXAS,

                                        Defendant - Appellant.

_____

Appeals from the United States District Court
for the Southern District of Texas
_____

Before JONES, Chief Judge, KING, JOLLY, HIGGINBOTHAM, DAVIS, SMITH,
WIENER, BARKSDALE, GARZA, DeMOSS, BENAVIDES, STEWART, DENNIS,
CLEMENT, PRADO, and OWEN, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     We voted this case en banc to decide whether, in the factual

context presented, the display of a Bible in a monument dedicated

to a philanthropic citizen and located on the grounds of the Harris

County Civil Courthouse, violates the Establishment Clause.  The

district court ordered the Bible removed.  We decline, however, to

reach the merits of this appeal.  Instead, we hold that the case is

moot because only days before oral argument in this en banc case,

the County removed the monument from the public grounds and placed

it in storage, to permit the ongoing renovation of the Courthouse

and its grounds.  Furthermore, it is not known when, where, or

under what circumstance the monument and Bible will be restored on the Courthouse grounds.  Because the case is moot, we must decide whether to vacate the district court judgment.  This decision rests upon equitable principles, and we conclude that the County has not met its burden of showing that it is entitled to the equitable relief of vacatur.  We therefore DISMISS the appeal and REMAND the case solely for a determination of appropriate attorneys' fees.

I.

In our panel opinion, 461 F.3d 504, we set out the history of the Mosher monument.  The monument was erected on the Harris County Civil Courthouse grounds in 1956 in honor of Houstonian philanthropist William S. Mosher and was refurbished and rededicated in 1995.  See id. at 505-07.  In considering whether the display of the Bible in the monument violated the Establishment Clause, we emphasized that Establishment Clause analysis is context-specific and fact-intensive.  See id. at 510-13.  In the specific context of the refurbishment and rededication of the monument, the panel majority concluded that the display of the Bible violated the Establishment Clause and thus affirmed the district court's judgment ordering the Bible removed.  See id. at 513-15.  The County timely petitioned for rehearing en banc, which we granted.

About two months before oral argument of this en banc case, it came to our attention that the Courthouse had closed for renovations and would likely remain closed for a few years.

2

Accordingly, the Court asked the parties to brief these changes as they affected the "case or controversy" requirement of Article III of the U.S. Constitution.

In response, Harris County informed the Court that the monument was scheduled to be removed and placed in storage during the renovations of the Courthouse, and that the renovations would not be completed until 2009 at the earliest. On January 19, 2007, only four days before we heard oral argument as an en banc court, Harris County removed the monument and placed it in storage. Harris County specifically has asserted that it will display the monument again after the renovations are complete.

## II.

The question before us is whether this appeal is moot. The district court ordered the Bible removed from the monument because it concluded that the placement of the Bible in the monument violated the Establishment Clause in the context of the facts of this case. Because the monument and Bible are no longer displayed, the County asks us to hold that the case has become moot, to dismiss the appeal, and to vacate the judgment. We review questions of mootness de novo. Ctr. for Individual Freedom v. Carmouche, 449 F.3d 655, 659 (5th Cir. 2006), cert. denied, 127 S.Ct. 938 (2007).

Furthermore, the County emphasizes that no decision has been made regarding when, where, or under what circumstances the monument will be displayed again in the future. According to the

3

County, then, the monument's future is too speculative to determine whether the monument will violate the Establishment Clause in the future. This raises questions of ripeness, which we also review de novo. Id. In determining the constitutionality of a religious display, the Supreme Court has made clear that "under the Establishment Clause detail is key." McCreary County, Ky. v. ACLU of Ky., 545 U.S. 844, 867-68 (2005) (citing County of Allegheny v. ACLU, Greater Pittsburgh Chapter, 492 U.S. 573, 595 (1989) ("[T]he question is what viewers may fairly understand to be the purpose of the display. That inquiry, of necessity, turns upon the context in which the contested object appears") (internal quotation marks and citation omitted)).

The importance of facts and context is evident from the respective outcomes in two recent Supreme Court decisions addressing the constitutionality of Ten Commandments displays. See McCreary, 545 U.S. at 844; Van Orden v. Perry, 545 U.S. 677 (2005). In both McCreary and Van Orden, the issue before the Supreme Court was whether a Ten Commandments display violated the Establishment Clause. See McCreary, 545 U.S. at 850; Van Orden, 545 U.S. at 681. The two cases, however, involved very different facts, and based on the specific facts and context of each case, the Supreme Court upheld the display in Van Orden but struck down the displays in McCreary. See McCreary, 545 U.S. at 881; Van Orden, 545 U.S. at 692.

4

In Van Orden, the Court upheld a Ten Commandments display on the Texas State Capitol grounds. Van Orden, 545 U.S. at 692. In its opinion, the plurality distinguished the display from classroom Ten Commandments displays held unconstitutional in Stone v. Graham, 449 U.S. 39 (1980) (per curiam), noting a "far more passive use of those texts than was the case in Stone." Van Orden, 545 U.S. at 691. Similarly, in his opinion concurring in the judgment in Van Orden,[1] Justice Breyer emphasized the importance of specific facts: "While the Court's prior tests provide useful guideposts ... no exact formula can dictate a resolution to such fact-intensive cases." Van Orden, 545 U.S. at 700 (Breyer, J., concurring) (internal citations omitted). Relying on the specific facts and context surrounding the Ten Commandments display on the Texas State Capitol grounds, Justice Breyer concluded that the display in this "borderline case" did not violate the Establishment Clause and was distinguishable from other Ten Commandments displays held unconstitutional by the Supreme Court, including the displays in McCreary. See id. at 700-03.

In McCreary, the Court struck down Ten Commandments displays in two Kentucky county courthouses. The two counties had installed

---

[1] For the purposes of our case today, Justice Breyer's concurrence is the controlling opinion in Van Orden. See Marks v. United States, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (internal quotations omitted)).

a display in their respective courthouses, and after the ACLU sued, the counties replaced them with a second set of displays. McCreary, 545 U.S. at 851-53. The district court ordered the second set of displays removed, and the counties installed a third set of displays, which the district court also ordered removed. Id. at 854-57. In its analysis, the Supreme Court looked to the purpose of the Ten Commandments displays, explaining that "purpose needs to be taken seriously under the Establishment Clause and needs to be understood in light of context." Id. at 874. The Court held the first and second displays unconstitutional based on the specific facts surrounding the displays. Id. at 868-70. The Court also struck down the third set of displays, and in doing so, the Court looked to the displays' historical contexts and evaluated them in the light of the first and second sets of displays. Id. at 871-72.

In this light, we see that this appeal is moot. Staley, an attorney, claimed Article III standing because she passed the monument going to and from the Courthouse in the course of her occupation. Out of sight in some warehouse, the monument no longer raises the potential Establishment Clause violations that offended Staley. It follows that the appeal is no longer required either to establish or to protect Staley's First Amendment rights. See, e.g., Harris v. City of Houston, 151 F.3d 186, 189 (5th Cir. 1998) ("we find it beyond dispute that a request for injunctive relief

6

generally becomes moot upon the happening of the event sought to be enjoined").

Additionally, any dispute over a probable redisplay of the Mosher monument is not ripe because there are no facts before us to determine whether such a redisplay might violate the Establishment Clause. Indeed, no decision has been made regarding any aspect of the future display of the monument. In the absence of this evidence, we are unable to conduct the fact-intensive and context-specific analysis required by McCreary and Van Orden. Thus, any claim that the Establishment Clause may be violated after the Courthouse and grounds have been renovated, is not ripe for review. See United States v. Carmichael, 343 F.3d 756, 761 (5th Cir. 2003) ("A claim is not ripe for review if 'it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (citing Texas v. United States, 523 U.S. 296, 300 (1998) (internal quotation marks omitted))).

III.

A.

Having concluded that this appeal is moot, we must now decide whether to vacate the district court judgment. In deciding whether to vacate, we first turn to the decisions of the Supreme Court. As reflected in United States v. Munsingwear, Inc., 340 U.S. 36 (1950), historically, the established rule was to vacate the judgment if the case became moot on appeal. Id. at 39; see also Duke Power Co. v. Greenwood County, S.C., 299 U.S. 259, 267 (1936).

7

In U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18 (1994), however, the Supreme Court rejected the longstanding rule reflected in Munsingwear, see id. at 23-24.

In U.S. Bancorp, the Supreme Court stepped back from the "automatic" vacatur that almost invariably had followed a finding of mootness on appeal. See id. The Ninth Circuit had held that a mortgagor could not proceed with a foreclosure sale because the mortgagee had filed for bankruptcy. Id. at 20. Once the case was before the Supreme Court, the parties settled and thus mooted the case. Id. The mortgagor, U.S. Bancorp, then asked the Supreme Court to vacate the decision of the Ninth Circuit. Id. In contemplating whether to vacate, the Supreme Court took the occasion to examine anew the general principles governing questions of vacatur. Reviewing its precedents, the Supreme Court observed: "From the beginning we have disposed of moot cases in the manner most consonant to justice in view of the nature and character of the conditions which have caused the case to become moot." Id. at 24 (internal quotations and citations omitted). The Supreme Court made clear and emphasized that vacatur is an "extraordinary" and equitable remedy, see id. at 25-26; thus, vacatur is to be determined on a case-by-case basis, governed by facts and not inflexible rules. In weighing the equities, the Supreme Court noted from its precedents "[t]he principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action." See id. at 24.

8

Thus, for example, "vacatur must be granted where mootness results from the unilateral action of the party who prevailed in the lower court." Id. at 23. Furthermore, "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." Id. at 25. In response to an argument that both parties agreed to the settlement and therefore both parties were "jointly responsible," the Supreme Court clarified that the burden is on "the party seeking relief from the status quo" of the lower court judgment to demonstrate "equitable entitlement to the extraordinary remedy of vacatur." Id. at 26 (emphasis added). As a component in determining the grant of equitable relief, the Supreme Court also acknowledged the public interest, e.g., whether vacatur might be abused by the losing party to advance a legal position rejected by the lower court. See id. at 26-27. In the light of these general equitable principles, the Supreme Court ultimately denied vacatur to U.S. Bancorp because a party settling a case has "voluntarily forfeited his legal remedy" of vacatur. See id. at 25.

Three years after its decision in U.S. Bancorp, the Supreme Court decided Arizonans for Official English v. Arizona, 520 U.S. 43 (1997), and, applying the equitable principles articulated in U.S. Bancorp, concluded that vacatur was "the equitable solution." Arizonans, 520 U.S. at 75. In Arizonans, the plaintiff prevailed in the district court, but while the case was on appeal, she

9

resigned from her public sector employment and mooted the case. Id. at 72. The case thus mooted by her voluntary actions unrelated to the litigation, the plaintiff then asked the Supreme Court to leave the district court judgment in place. See id. at 74. Notwithstanding that the case had been mooted by her voluntary actions unrelated to the litigation, the Supreme Court rejected her request and, without raising the question of whether the plaintiff intended her actions to moot the case, concluded that "the 'exceptional circumstances' that abound in this case," coupled with a federalism concern, warranted vacatur. See id. at 75 (quoting U.S. Bancorp, 513 U.S. at 29). Thus, in Arizonans, the Supreme Court decided, on equitable grounds, the question of vacatur against the party voluntarily causing mootness. See id. Since Arizonans, the Supreme Court does not appear to have spoken on the issue of vacatur.[2]

---

[2] Since U.S. Bancorp and Arizonans, our Court has decided questions of vacatur not inconsistent with the equitable principles in U.S. Bancorp. For example, in cases mooted by actions that were clearly unattributable to the voluntary actions of the parties, we have consistently vacated. See Murphy v. Fort Worth Independent School District, 334 F.3d 470, 471 (5th Cir. 2003) (per curiam) (vacating because the appellee's graduation was "happenstance" and not "the voluntary action of the losing party"); AT&T Commc'ns of the Sw., Inc. v. City of Dallas, Tex., 243 F.3d 928, 930–31 (5th Cir. 2001) (vacating because the case was mooted by enactment of a state statute and repeal of a city ordinance, not the "voluntary action" of the appellant); AT&T Commc'ns of the Sw., Inc. v. City of Austin, 235 F.3d 241, 244 (5th Cir. 2000) (vacating because the case was mooted by enactment of a state statute, not the "voluntary action" of the appellant); Pederson v. La. State Univ., 213 F.3d 858, 883 (5th Cir. 2000) (vacating because the appellee university was "frustrated by the vagaries of circumstance", that is, by the appellant's graduation). Similarly, in cases mooted by the

10

B.

Thus, in the light of the above, we now turn to consider whether Harris County has met its burden of demonstrating an "equitable entitlement to the extraordinary remedy of vacatur." See U.S. Bancorp, 513 U.S. at 26. Here, it is clear that Harris County caused this case to become moot by voluntarily removing the monument. Although the timing of the removal may be open to question, we acknowledge that the bottom-line cause of the removal was related to the ongoing renovations. Against this background, the County's basic argument is that its voluntary removal of the monument was unrelated to the case and was not done with the intent of mooting the case. Therefore, according to the County, the mootness occurred by mere "happenstance", and it is entitled to vacatur as the usual default remedy under Munsingwear.

---

voluntary actions or inactions of a party, we have decided the vacatur question in favor of the party that did not cause the case to become moot. See Goldin v. Bartholow, 166 F.3d 710, 718-22 (5th Cir. 1999) (vacating because appellees caused the mootness by failing to substitute the proper defendant); Sierra Club v. Glickman, 156 F.3d 606, 620 (5th Cir. 1998) (refusing to vacate because the appellant mooted the case by voluntarily complying with the district court's judgment); Harris, 151 F.3d at 189-91 (vacating the district court judgment after the appellee city mooted the case by completing the proposed annexation). Nevertheless, even though these cases stand for the proposition that the party causing mootness does not get the benefit of the judgment below, none of these cases speak directly to the facts before us today, and as we have indicated, U.S. Bancorp requires that we determine vacatur after examining the equities of this case. See U.S. Bancorp, 513 U.S. at 25-26.

11

As discussed above, the Supreme Court rejected the uniform rule reflected in Munsingwear when it decided U.S. Bancorp. See 513 U.S. at 23-24. It is U.S. Bancorp, not the earlier case of Munsingwear, that controls our decision today, and, as we have indicated, U.S. Bancorp requires that we look at the equities of the individual case. See id. at 25-26.

Nevertheless, it is true that the mootness in U.S. Bancorp arose out of the litigation itself (settlement of the case) and it might be said that the losing party intended to moot the case by settling it. Among the post-U.S. Bancorp cases, the best support for the County's position seems to be Russman v. Board of Education, 260 F.3d 114 (2d Cir. 2001).[3] In Russman, the Second Circuit acknowledged that under U.S. Bancorp, vacatur "depends on the equities of the case," and the "primary concern is the fault of the parties in causing the appeal to become moot." Id. at 121. In Russman, the school prevailed in the district court; the plaintiff-appellant student, Russman, then voluntarily withdrew from the school and thus mooted the case while on appeal. Id. at 118-19. The Second Circuit acknowledged that, generally, "where the appellant has caused the mootness, we may dismiss the appeal without vacating the district court's judgment." Id. at 122. Notwithstanding this general rule, the Second Circuit followed a

---

[3] See also Khodara Envtl., Inc. v. Beckman, 237 F.3d 186 (3d Cir. 2001); Nat'l Black Police Assoc. v. Dist. of Columbia, 108 F.3d 346 (D.C. Cir. 1997); Dilley v. Gunn, 64 F.3d 1365 (9th Cir. 1995).

different approach in Russman (the "Russman approach") to the remedy of vacatur: "However, we believe conduct that is voluntary in the sense of being non-accidental, but which is entirely unrelated to the lawsuit, should not preclude our vacating the decision below." Id. (emphasis added). The Second Circuit went on to vacate the district court judgment. Id. at 123.

We note, however, that even under the Russman approach, the language "should not preclude" does not set out a hard and fast rule; there is no language in Russman that bars other equitable considerations -- if they happen to be present -- in fashioning a remedy for mootness. We further note that the Supreme Court has never required, or even suggested, such an approach although it has had ample opportunity to do so. Whether a party's voluntary conduct was not done with specific intent to moot the case is certainly one factor we may consider, but the absence of such specific intent does not outweigh other equitable factors.

Here, for example, three equitable factors distinguish this case from Russman, and indeed, from the other cases that have applied the Russman approach, see Khodara Envtl., 237 F.3d at 195; Nat'l Black Police Assoc., 108 F.3d at 351-54; cf. Dilley, 64 F.3d at 1370-71 (remanding). First, in none of those cases did a party obtain full relief in the district court, and on appeal, before the opposing party took actions mooting the case. Second, in none of those cases did a party assert outright that its actions mooting the case were only temporary. And third, in those cases, the

13

district court judgment had a greater effect on non-parties to the litigation. See Russman, 260 F.3d at 118 (district court held that the U.S. Constitution and New York law do not require on-site special education services at private parochial school); Khodara Envtl., 237 F.3d at 191-92 (district court held federal statute facially unconstitutional); Nat'l Black Police Assoc., 108 F.3d at 348 (district court held initiative limiting campaign contributions unconstitutional and enjoined enforcement); Dilley, 64 F.3d at 1367 (district court held that prison failed to provide inmates with constitutionally adequate access to the law library and ordered changes in the library's policies). Here, in contrast, this case is fact and party specific.[4]

C.

Having considered the arguments favoring the County, we now turn to the equities in favor of preserving the district court judgment. Here, Staley prevailed not only in the district court but also before a panel of this Court.[5] Should we vacate, Staley will be denied her judgment, not because her claim lacked merit, nor because of her choices or acts, but for the reason that Harris

---

[4] Given these differences, the equities in the decisions of our sister circuits are different from the equities in this case. Accordingly, we are not creating a circuit split because, like the decisions of our sister circuits, we are deciding this case based on the facts and the equities before us.

[5] Of course, here, only the district court judgment survives. When the Court voted the case en banc, the panel opinion was automatically abrogated. See Freeman v. Tex. Dept. of Criminal Justice, 369 F.3d 854, 864 n.12 (5th Cir. 2004).

14

County, by its "last-minute" voluntary acts, removed (temporarily) the monument from public viewing.

In weighing the equitable considerations in this case, we also consider the County's conduct in the course of mooting the case. Here, not only did the County's voluntary actions cause this case to become moot, but, more importantly, the County has pledged to display the monument again after the renovations. Additionally, although the County was well aware of the renovations ever since the Harris County Commissioners Court approved the "Master Preservation Plan" in February 2004, it has failed to keep the courts updated on the status of the renovations or to suggest mootness until we raised the question. In fact, the County never apprised the courts that renovations could have a possible impact on this litigation. Instead, it was Staley's attorney who raised the matter at trial when he asked Harris County Judge Robert Eckels on direct examination whether the monument would be removed; Judge Eckels replied that the plans were not well-enough developed to answer the question. After trial, as many months passed, the case proceeded to appeal in this Court, through the panel, the en banc petitions, and the en banc vote without the County ever having suggested that the monument -- the center of the litigation -- could be removed at any time, ending the controversy, even though "[i]t is the duty of counsel to bring to [our] attention, 'without delay,' facts that may raise a question of mootness." See Arizonans, 520 U.S. at 68 n.23. When we raised the issue, Harris

15

County proceeded on its own volition to remove the monument only days before oral argument, and now it seeks advantage of its conduct, asking us to hold the case moot and vacate the district court judgment against it. The totality of this conduct does not support the County's obligation to demonstrate an "equitable entitlement to the extraordinary remedy of vacatur." See U.S. Bancorp, 513 U.S. at 26.

Finally, the County has not shown how the public interests weigh in its favor. See id. at 27 (considering the public interests). Indeed, the preservation of the district court judgment serves the judicial and community interests by discouraging relitigation of the identical issues by the same parties under the same circumstances. Of course, whether any future case involving the Mosher monument is proscribed by the district court judgment and injunction will depend on its own facts and circumstances, and that question, if it arises, will fall within the determination of the district court in the first instance.

D.

Weighing the equities before us, we dispose of this case "in the manner most consonant to justice," see U.S. Bancorp, 513 U.S. at 24, and conclude that Harris County has not carried its burden of demonstrating an "equitable entitlement to the extraordinary remedy of vacatur," see id. at 26. Balancing the relevant

16

considerations and considering the totality of the equities, we leave the district court judgment in place.[6]

IV.

The final and separate question before us is the question of attorneys' fees. "[A] determination of mootness neither precludes nor is precluded by an award of attorneys' fees. The attorneys' fees question turns instead on a wholly independent consideration: whether plaintiff is a 'prevailing party.'" Doe v. Marshall, 622 F.2d 118, 120 (5th Cir. 1980). To qualify as a prevailing party, "[a]ll that is required is that the plaintiff obtain the primary relief sought." Id.[7]

Given our opinion today, Staley has obtained the primary relief she sought and therefore remains the prevailing party . See id. As a prevailing party, she is entitled to appropriate attorneys' fees. See id.

V.

---

[6] As to Judge DeMoss's suggestion to the district court that it consider modifying its injunction on remand, see ___ F.3d at ___ (DeMoss, J., dissenting), we emphasize that "[o]rdinarily, the purpose of a motion to modify an injunction is to demonstrate that changed circumstances make the continuation of the order inequitable." ICEE Distrib., Inc. v. J&J Snack Foods Corp., 445 F.3d 841, 850 (5th Cir. 2006) (quoting Black Assoc. of New Orleans Fire Fighters v. City of New Orleans, La., 853 F.2d 347, 354 (5th Cir. 1988)). Here, changed circumstances do not render the district court's injunction "inequitable." See id.

[7] The Supreme Court's decision in Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598 (2001), does not preclude attorney's fees in this case because Staley, unlike the plaintiffs in Buckhannon Board, prevailed in the district court, see id. at 600-02.

17

Because the Mosher monument has been placed in storage indefinitely and is no longer available for public viewing, the appeal is DISMISSED as moot. We decline to vacate the district court's judgment, and we REMAND the case to the district court solely for a determination of appropriate attorneys' fees for Staley.

DISMISSED and REMANDED.

EMILIO M. GARZA, Circuit Judge, with whom EDITH BROWN CLEMENT and PRISCILLA R. OWEN, Circuit Judges, join, dissenting:

Because I disagree with the majority's determination that this case is moot on the present record, I respectfully dissent.

If this case is moot, it is because))as the majority recognizes))"Harris County, by its 'last-minute' voluntary acts, [has] removed (temporarily) the monument from public viewing." What the majority wholly ignores, however, is the well-settled rule "that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). Otherwise, "the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" *Id.* (quoting *City of Mesquite*, 455 U.S. at 289 n.10). Accordingly, "the standard . . . for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). The party asserting mootness))in this case

19

Harris County[1]))bears the "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again." *Id.*

Despite the majority's assertion to the contrary, it is not at all clear that Harris County's voluntary removal of the monument caused this case to become moot. Rather, Harris County's placement of the monument in storage pending completion of the Courthouse renovations mooted this case only if that act made it absolutely clear that the Establishment Clause violation alleged to have occurred in this case could not reasonably be expected to recur. *Id.* at 193. This is a disputed factual matter, as to which no record has been developed because the issue of mootness was raised for the first time by this Court. Although Harris County asserts in its appellate brief that the redesign of the Courthouse will make it a "physical impossibility" to return the monument to its precise former location, such an assertion is not sufficient to satisfy the heavy burden of persuasion borne by Harris County, particularly since Harris County has made clear its intention to

---

[1] As the majority points out, upon learning that the Courthouse had closed for renovations and would likely remain closed for a few years, this Court asked the parties to brief that change of circumstances as it pertained to issues stemming from Article III's case or controversy requirement, including but not limited to standing and mootness. In response, Harris County took the position in its brief and at oral argument that changed circumstances mooted the case because the monument was being placed in storage until the renovations were completed. Thus, Harris County is the party asserting mootness in this case.

20

redisplay the monument once the renovations are complete. *See Concentrated Phosphate Exp. Ass'n*, 393 U.S. at 203 (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)); *Gates v. Cook*, 376 F.3d 323, 337 (5th Cir. 2004). Without any factual development on the nature and extent of the Courthouse renovations and what, if any, lasting impact they will have on the monument, it cannot "be said with assurance that there is no reasonable expectation that the alleged violation will recur" or that Harris County's recent actions "have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks and citations omitted).[2] I would therefore remand this case to the district court for factfinding on these issues and for an initial mootness determination.

---

[2] Indeed, the majority's discussion of the equities that favor keeping the district court's judgment in place))which emphasizes that Harris County's removal of the monument is only temporary and that preserving the lower court judgment will serve to discourage the parties from relitigating "the identical issues . . . under the same circumstances in the future"))only highlights the fact that we cannot be assured without an underlying record that Harris County will not resume its allegedly unconstitutional conduct.

**Harold R. DeMoss, Jr., Circuit Judge, with whom Jerry E. Smith, Circuit Judge, joins, dissenting in part:**

I concur in the majority's conclusion that this case is moot. However, because I believe that vacatur of the district court's judgment and permanent injunction is appropriate, I respectfully dissent in part.

Properly framed, the question is whether vacatur is appropriate when voluntary action taken by an appellant moots a case, *but the action taken is completely unrelated to the litigation*. The question should be answered in the affirmative.

Admittedly, the few vacatur rules given to us by the Supreme Court do not directly answer the question, and our Court has not yet squarely addressed it. However, every other circuit court to address the issue has determined that vacatur is appropriate under such circumstances.

For example, in *Russman v. Board of Education*, the Second Circuit was forced to decide whether vacatur was warranted after the plaintiff-appellant student voluntarily withdrew from school, thereby mooting the

22

case between her and the defendant-appellee school board. 260 F.3d 114, 117-18 (2d Cir. 2001). The student's reason for leaving school was preplanned and unrelated to the lawsuit. *Id.* at 123. In determining that vacatur was appropriate, the court provided and explained all of the rules and reasoning that our Court needs to answer the question in this case. Because the *Russman* court so eloquently stated its position, below I quote from large portions of the opinion.

The court began with the basic rules of a vacatur:

> In general, where the appellee has caused the case to become moot, we vacate . . . . On the other hand, where the appellant has caused the mootness, we may dismiss the appeal without vacating the district court's judgment.

*Id.* at 121-22 (citations omitted).

The court went on to explain the rationale behind the general rules:

> If we were to vacate where the party that lost in the district court has taken action to moot the controversy, the result would be to allow that party to eliminate its loss without an appeal and to deprive the winning party of the judicial protection it has fairly won.

*Id.* at 122 (citations omitted).

Then, the court applied that understanding to the narrow question presented, the same question we are presented with in this case:

> [N]ot all actions taken by an appellant that cause mootness necessarily bar vacatur of the district court's judgment. For an appellant's conduct to constitute "forfeiture" of the benefit of vacatur . . . we believe [the appellant] must have intended that the appeal become moot, either in the sense that mootness was his purpose or that he knew or should have known that his conduct was substantially likely to moot the appeal. Accordingly, an appellant's conduct that is undertaken with an intent to escape the collateral consequences of the decision below may defeat vacatur . . . . Similarly, if the appellant's conduct of the litigation itself causes mootness, such as where he settles the case or fails to prosecute the appeal, the appellant must know that the appeal will be mooted and thus vacatur will usually be inappropriate.

*Id.* at 122-23 (citations omitted).

Finally, the court crafted the precise rule, a rule we should adopt:

> [C]onduct that is voluntary in the sense of being non-accidental, *but which is entirely unrelated to the lawsuit*, should not preclude our vacating the decision below.

*Id.* at 23 (emphasis added) (citations omitted).

This rule has been adopted by every other circuit that has addressed this precise issue. *Khodara Envtl., Inc. v. Beckman*, 237 F.3d 186, 195 (3d Cir. 2001) (Alito, J.) (vacating the district court's judgment because the appellant's voluntary action that mooted the case was not taken "to overturn an unfavorable precedent," but rather was taken for "reasons totally independent of the pending lawsuit"); *Nat. Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 351-52 (D.C. Cir. 1997) (vacating because the appellant's actions were not taken for the manipulative purpose of mooting the case; rather, they were taken for reasons unrelated to the lawsuit); *Dilley v. Gunn*, 64 F.3d 1365, 1372 (9th Cir. 1995) (remanding a moot case to the district court with instructions to vacate unless the court found that appellant's action was voluntary and related to the lawsuit).

Applying the rationale of every circuit court to address the issue, it is clear that in this case vacatur of the district court's judgment and injunction is appropriate. It cannot reasonably be said that Harris County's refurbishment of the Old Civil Courts Building,

25

an action that is voluntary only in the sense that it is non-accidental, is in any way related to this litigation. In fact, the decision to close and refurbish the building was made years before Staley's filing of this lawsuit, and would have occurred even if this lawsuit was never commenced.[1] Therefore, the refurbishment of the building, an action completely unrelated to this litigation, indirectly mooted this case. Under such circumstances, our well-established practice of vacating judgments and remedies in moot cases should control.

No other relevant factor suggests that we should leave in place the district court's judgment and injunction. Indeed, although the majority states that its decision is based on its balancing of the equities in this case, it cites no *relevant* factors that weigh in favor of not vacating.[2] For example, in some cases it can

---

[1]The Old Civil Courts Building closed on April 28, 2006, and the new courthouse opened the following Monday, on May 1, 2006.

[2]Although the majority states that three equitable factors unique to this case weigh in favor of not vacating, those novel factors are unpersuasive because they are either irrelevant, factually inaccurate or based on a faulty premise.

First, the majority relies on Staley's "temporary victory" before the original three-judge panel of this Court. I fail to see the relevance of this alleged factor. Harris County timely

be argued that a factor weighing against vacatur is the

theory that judicial precedents are presumptively valid

---

petitioned for rehearing. A majority of this en banc Court agreed that the Establishment Clause issue warranted rehearing before the entire Court. Simply put, the decision to rehear the case abrogated the panel's decision, and it matters not whether that decision was made in Staley's favor. In our legal reality, the panel decision no longer exists (except, of course, for very limited purposes such as explaining the procedural history of the case or the parties' arguments throughout the litigation). Indeed, this en banc Court *has not* spoken on the merits of the district court's decision or the original panel's decision. Thus, to the extent that the majority implies that Staley has some sort of an equitable interest in the judgment and remedy, it is mistaken. Of course, the majority's implication is somewhat of a self-fulfilling prophecy: Staley has an interest in the judgment and remedy because the majority has not vacated them; had it vacated them, she would have no such interest in them.

Second, the majority concludes that not vacating is equitable because Harris County has stated that its removal of the monument is only temporary. To start, this factor is relevant only if it is presumed that redisplaying the monument is unconstitutional. This is a faulty premise, however, because this Court has not addressed the constitutionality of the monument. More importantly, this factor is based on a factual inaccuracy. Harris County stated in its brief and at oral argument that the *possibility* existed that it would redisplay the monument. It is also possible, however, that Harris County will not redisplay the monument. It is also possible that Harris County will redisplay the monument, but in a different location or different context. The possibilities are endless, and not nearly as predicable as the majority states. In any event, contrary to the majority's assertion, Harris County has not stated that the monument *will be* redisplayed at all.

Finally, the majority contends that equity favors not vacating because the district court's judgment and remedy in this case have little effect on non-parties to this litigation. This will come as a big surprise to millions of Harris County residents who have had a possibly constitutional public monument removed at the request of one individual. I am confident most readers will immediately see the fallacy in the contention that the parties in a religious display case are the only ones affected by its outcome. Perhaps this contention is rooted in the majority's apparent presupposition that the monument is unconstitutional even though we have not reached the issue.

and helpful to the legal community; therefore, even in moot cases, they sometimes should be left in tact. *See U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). That theory is not applicable here. First, the theory was not intended to apply to district court precedent, which merely is persuasive and is not binding on other courts. *See Russman*, 260 F.3d at 122 n.2.[3]

Furthermore, and more importantly here, the district court's judgment and injunction in this case, which were based on Supreme Court Establishment Clause jurisprudence, are of practically no precedential value to anyone because they preceded the Supreme Court's decisions in *Van Orden* and *McCreary County*. Without question, these two cases are now the starting point of any religious display analysis. (The original panel opinions in this case, which of course were vacated by

---

[3]Moreover, the Supreme Court noted several times that its holding in *U.S. Bancorp* is strictly limited to the proposition "that mootness *by reason of settlement* does not justify vacatur . . . ." *U.S. Bancorp*, 513 U.S. at 29 (emphasis added). "[T]he case before us involves only a motion to vacate, *by reason of settlement* . . . ." *Id*. at 28 (emphasis added). The case before us involves mootness by reason of a preplanned renovation project, not voluntary settlement.

our grant of en banc reconsideration on November 17, 2006, focused almost entirely on *Van Orden* and *McCreary County*.) Therefore, the district court's judgment and the injunction that followed were based on precedent that is certainly outdated and perhaps completely irrelevant. There is absolutely no equity in leaving intact an opinion, judgment or remedy that is based on superseded precedent. Therefore, this factor actually favors vacatur.

Similarly, as I mentioned previously, the majority's decision to not vacate is contrary to the decisions by other circuits to vacate under similar circumstances. There is no equity in creating a circuit split to leave in place the judgment and remedy in this case; our usual course is to avoid such splits if at all possible.

I recognize that a majority of this Court somehow finds that the equities favor not vacating. Of course, this holding does not preclude Harris County from petitioning the district court for a modification of its injunction. "Modification of an injunction is appropriate when the legal or factual circumstances justifying the

29

injunction have changed." *ICEE Distribs., Inc. v. J&J Snack Foods, Corp.*, 445 F.3d 841, 850 (5th Cir. 2006) (Jolly, J.). Given the significant factual changes that have occurred since the injunction was entered, including the closure, continued vacancy, and plan to renovate the Old Civil Courts Building, in addition to the removal of the Mosher monument, a request by Harris County for the district court to modify the injunction clearly would be appropriate. In addition, the Supreme Court's (supposed) clarification of the Establishment Clause in *McCreary County* and *Van Orden*, discussed *supra*, may also provide a basis for the district court to revisit the continuing propriety of the injunction.

I would vacate the judgment and injunction entered below, but recognizing that a majority of this Court disagrees, I simply note that there exists a strong basis for modification.