# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30858

United States Court of Appeals
Fifth Circuit

**FILED**

March 13, 2018

Lyle W. Cayce
Clerk

KENNETH HALL,

>  Plaintiff–Appellant,

BYRON SHARPER,

>  Intervenor Plaintiff–Appellant,

v.

STATE OF LOUISIANA; JOHN BEL EDWARDS, in his official capacity as Governor of the State of Louisiana; JEFF LANDRY, in his official capacity as Attorney General; TOM SCHEDLER, In his official capacity as the Louisiana Secretary of State; CITY OF BATON ROUGE; PARISH OF EAST BATON ROUGE; SHARON WESTON BROOME, Official Capacity as the Mayor-President of Baton Rouge,

>  Defendants–Appellees.

---

Appeal from the United States District Court
for the Middle District of Louisiana

---

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Kenneth Hall and Byron Sharper appeal the district court's denial of their Rule 60(b)(6) motion to vacate claims rendered moot by intervening legislation enacted after the court issued its judgment but before the time to appeal had expired. We affirm.

No. 15-30858

## I

In 1993, the Louisiana Legislature enacted Act 609, which replaced Baton Rouge's at-large electoral system with one that divided the city into two electoral sections, demarcated Election Section One and Election Section Two. The Legislature then subdivided the majority-black Election Section One into two electoral divisions (B and D) and the majority-white Election Section Two into three electoral divisions (A, C, and E). This electoral formulation is known as a "2-3" districting system.

In this system, each division elects one judge to Baton Rouge City Court. After the enactment of Act 609, Baton Rouge elected two black judges to divisions B and D and three white judges to divisions A, C, and E in every election, resulting in a court that was constantly composed of two black judges and three white judges. During this time, Baton Rouge's demographics shifted from 43.9% black and 53.9% white to 54.5% black and 39.4% white.

In light of these facts, Hall initiated a suit, in which Sharper subsequently intervened, against the State of Louisiana, the City of Baton Rouge, the Parish of East Baton Rouge, and various state officials (collectively the Government). Hall and Sharper (collectively Hall) asserted claims under the Voting Rights Act, requesting declaratory and injunctive relief under the theory that the "2-3" districting system violated Section 2 of the Act and requested that the court declare the State of Louisiana subject to the Act pursuant to its Section 3(c). Also alleging that the "2-3" districting system contravened the Fourteenth and Fifteenth Amendments to the United States Constitution, Hall sought damages, inclusive of costs, pursuant to 42 U.S.C. §§ 1983, 1986. After a bench trial, the district court rejected each of Hall's claims.

Two days after the district court issued its judgment, the Louisiana Legislature enrolled House Bill 76, which sought to replace the "2-3" districting

No. 15-30858

system with a "2-2-1" districting system. Under the new system, Election Sections One and Two elect two judges each, and the city as a whole elects one judge to an at-large seat. The Legislature enacted House Bill 76 as Act 374, which Governor Piyush "Bobby" Jindal signed into law on July 1, 2015, before Hall's time to appeal had passed. Act 374, which took immediate effect, rendered Hall's claims for injunctive and declaratory relief from the "2-3" districting system moot. Because these claims were moot, Hall lost the opportunity to appeal.

Hall timely moved pursuant to Federal Rule of Civil Procedure 60(b)(6) for the district court to vacate its judgment. Specifically, Hall maintained that because the passage of Act 374 was a circumstance outside of his control that eliminated his ability to appeal the district court's judgment, the district court should vacate the portion of the judgment related to the mooted Voting Rights Act Section 2 claim.

The district court denied Hall's motion to vacate. The court reasoned that, although Hall's claims for injunctive and declaratory relief under the Voting Rights Act were moot, vacatur is not an automatic right and Hall did not show that the balance of equities warranted such an "extraordinary remedy."[1] To reach its decision, the court assessed "twin considerations of fault and public interest."[2] Fault, the court held, weighed in favor of vacatur because Hall had not caused his claims to become moot. Nevertheless, the court determined that the public interest in preserving precedent and furthering judicial consistency, when combined with the judgment's minimal effect on non-parties, was sufficient to offset Hall's lack of fault, resulting in the denial of Hall's Rule 60(b)(6) motion.

---

[1] *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994).

[2] *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 (4th Cir. 2000).

No. 15-30858

Hall appeals only the denial of his Rule 60(b)(6) motion to vacate his Voting Rights Act Section 2 claim.

## II

We review the denial of a Rule 60(b)(6) motion for abuse of discretion.[3] A court "abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence."[4] Questions of law receive de novo review.[5]

Rule 60(b)(6) empowers a district court to "relieve a party . . . from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief."[6] Rule 60(b) "merely prescribes the practice in proceedings to obtain relief" and "does not assume to define the substantive law as to the grounds for vacating judgments."[7] Courts have clarified that, although broadly stated, Rule 60(b)(6) justifies relief in only "extraordinary circumstances."[8]

Hall contends there are three principal errors in the district court's assessment of whether vacatur was appropriate. First, Hall asserts that the district court misapplied the Supreme Court's decision in *U.S. Bancorp Mortgage Company v. Bonner Mall Partnership*[9] and our court's en banc decision in *Staley v. Harris County, Texas*.[10] Second, Hall argues that the district court erroneously speculated that its judgment influenced the Louisiana legislature and erred in concluding that this influence weighed

---

[3] *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353 (5th Cir. 1993).

[4] *Hesling v. CSX Transp., Inc.* 396 F.3d 632, 638 (5th Cir. 2005) (quoting *Kennedy v. Tex. Utils.*, 179 F.3d 258, 265 (5th Cir. 1999)).

[5] *Yesh Music v. Lakewood Church*, 727 F.3d 356, 359 (5th Cir. 2013).

[6] FED. R. CIV. P. 60(b)(6).

[7] *Id.* advisory committee's note to 1946 amendment; *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988) (noting that Rule 60(b)(6) "does not particularize the factors that justify relief").

[8] *Liljeberg*, 486 U.S. at 864 (quoting *Ackermann v. United States*, 340 U.S. 193 (1950)).

[9] 513 U.S. 18 (1994).

[10] 485 F.3d 305 (5th Cir. 2007) (en banc).

4

against vacatur. Hall contends that "the key equitable consideration is whether the party seeking vacatur is responsible for the loss of its appeal rights." He maintains that "[i]f an appeal is mooted by any circumstance beyond that party's control," then "equity favors vacatur." Third, Hall argues that the district court erred in concluding that "it did not expect its judgment to have great effect on nonparties to the litigation."

Hall's briefing relies on court decisions in which the controversy became moot while the case was on appeal, and an appellate court considered the question of whether to vacate the district court's judgment and opinion or order.[11] The source of a district court's authority to vacate a judgment when a controversy has become moot is Rule 60(b),[12] with exceptions regarding an injunction not relevant here.[13] An appellate court's authority to vacate a district court's judgment when a pending appeal has become moot is 28 U.S.C. § 2106.[14] We therefore examine, as an initial matter, whether the factors to be considered by a district court regarding vacatur in the context of a Rule 60(b)(6) motion differ from those to be considered by an appellate court under § 2106.

*United States v. Munsingwear, Inc.*[15] and *Bancorp* are two of the Supreme Court's seminal decisions regarding the propriety of vacatur when a case is rendered moot. Both of these cases, and others applying them,

---

[11] *See, e.g.*, *Bancorp*, 513 U.S. 18; *Staley*, 485 F.3d 305.

[12] *See* FED. R. CIV. P. 60(b)(6) ("Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . . any other reason that justifies relief.").

[13] *See Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 121-22 (4th Cir. 2000).

[14] *See* 28 U.S.C. § 2106 ("The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.").

[15] 340 U.S. 36 (1950).

addressed vacatur in the context of § 2106—the appellate vacatur rule—not Rule 60(b)(6).[16]  The Circuit courts that have addressed whether *Bancorp* or other Supreme Court decisions applying § 2106 *necessarily* bind a district court in assessing a Rule 60(b) motion have held that they do not.[17]  We agree.

Driving this decision is the basic judicial tenet that "cases cannot be read as foreclosing an argument [with which] they never dealt."[18]  Neither the Supreme Court nor our court has addressed the standard for assessing a Rule 60(b)(6) motion for vacatur when a case has become moot before an appeal has been taken.  Some cases construing § 2106 do contain broad, abstract propositions that, despite not directly addressing Rule 60(b)(6), could be construed to reach all vacatur decisions.[19]  But, to the extent that these propositions were not necessary to determine the scope of the *appellate* court's power under § 2106, the propositions are mere obiter dicta devoid of binding

---

[16] *See, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 712-14 (2011); *Alvarez v. Smith*, 558 U.S. 87, 94-97 (2009); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71-72 (1997); *Anderson v. Green*, 513 U.S. 557, 560 (1995) (per curiam); *Murphy v. Fort Worth Indep. Sch. Dist.*, 334 F.3d 470, 470-71 (5th Cir. 2003) (per curiam); *AT&T Commc'ns of the Sw., Inc. v. City of Dall.*, 243 F.3d 928, 931 (5th Cir. 2001); *AT&T Commc'ns of the Sw., Inc. v. City of Austin*, 235 F.3d 241, 243-44 (5th Cir. 2000); *Pederson v. La. State Univ.*, 213 F.3d 858, 883 (5th Cir. 2000); *Harris v. City of Hous.*, 151 F.3d 186, 191 (5th Cir. 1998); *In re Int'l Aviation Servs. I, Ltd.*, 1999 WL 301893 (5th Cir. May 5, 1999) (per curiam) (unpublished).

[17] *Marseilles Hydro Power LLC v. Marseilles Land & Water Co.*, 481 F.3d 1002, 1003 (7th Cir. 2007); *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116-17 (4th Cir. 2000); *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1167-70 (9th Cir. 1998).

[18] *Waters v. Churchill*, 511 U.S. 661, 678 (1994).

[19] *See A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 340-41 (1961) (construing *Munsingwear* as establishing that "a party should not be concluded in subsequent litigation by a District Court's resolution of issues, when appellate review of the judgment incorporating that resolution, otherwise available as of right, fails because of intervening mootness"); *United States v. Munsingwear*, 340 U.S. 36, 39 (1950) ("The established practice of the Court in dealing with a civil case . . . which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss.").

effect.[20]  In any event, the Supreme Court has effectively cabined this broad language in later opinions, clarifying that its decisions apply not when a case becomes moot before the right to appeal is exercised but rather "[w]hen a case becomes moot *pending appellate adjudication*."[21]  Hall's claims became moot before an appeal was filed—not pending appellate adjudication.[22]

For the reasons articulated by the Fourth Circuit,[23] we conclude that "absent unusual circumstances, the appellate vacatur decision under *Bancorp* is informed almost entirely, if not entirely, by the twin considerations of fault and public interest,"[24] and that those considerations "must also be largely determinative of a district court's decision whether to vacate its own judgment due to mootness under Rule 60(b), and specifically Rule 60(b)(6)."[25]  But we also agree with the Fourth Circuit that "vacatur is available as a remedy to the district court . . . even where the considerations of relative fault and the public interest would otherwise counsel against vacatur."[26]  We therefore proceed to consider how these principles apply in the present case.

### III

To understand fully the Supreme Court's decisions as to whether vacatur is appropriate when a case becomes moot, we must consider its decision in *Munsingwear*.  In that case, the Government contended that the defendant

---

[20] *See, e.g.*, *Rios v. City of Del Rio*, 444 F.3d 417, 425 n.8 (5th Cir. 2006) ("The binding force of earlier opinions extends to alternative holdings but not to *obiter dictum*."); *see also Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000) (defining obiter dictum).

[21] *Arizonans for Official English*, 520 U.S. at 71 (emphasis added); *see also Camreta*, 563 U.S. at 712 (addressing only "[w]hen a civil suit becomes moot pending appeal").

[22] *See Kellogg Brown & Root Servs. v. United States ex rel. Carter*, 135 S. Ct. 1970, 1978 (2015) (defining "pending").

[23] *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 117-18 (4th Cir. 2000).

[24] *Id.* at 118.

[25] *Id.*

[26] *Id.* at 121.

sold commodities in violation of regulations that fixed a maximum price.[27]  The district court held that the defendant had complied with the regulations.[28]  The Government appealed, and while that appeal was pending, the commodity at issue was decontrolled.[29]  The court of appeals granted the defendant's motion to dismiss the appeal for mootness.[30]  The Government failed to request vacatur of the district court's adverse judgment, and the Supreme Court held that the judgment was res judicata.[31]  However, in what the Court later confirmed was dictum,[32] the Court said that had the Government moved to vacate the judgment:

> [t]he established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss.[33]

The Court reasoned that vacatur "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance.  When that procedure is followed, the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary."[34]  Notably, the Court apparently

---

[27] *United States v. Munsingwear, Inc.*, 340 U.S. 36, 37 (1950).

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.* at 40-41.

[32] *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 23 (1994) ("To begin with, the portion of Justice Douglas' opinion in *Munsingwear* describing the 'established practice' for vacatur was dictum; all that was needed for the decision was (at most) the proposition that vacatur should have been sought, not that it necessarily would have been granted.").

[33] *Munsingwear*, 340 U.S. at 39.

[34] *Id.* at 40.

considered the change in regulations "happenstance," not the unilateral action of the Government.

The Supreme Court subsequently decided *Bancorp*, in which it considered "whether appellate courts in the federal system should vacate civil judgments of subordinate courts in cases that are settled after appeal is filed or certiorari sought."[35]  Both parties in *Bancorp* "agree[d] that vacatur must be decreed for those judgments whose review is . . . 'prevented through happenstance'" or by "unilateral action of the party who prevailed in the lower court."[36]  The precise question was whether the Court should "extend[] *Munsingwear* to settlement."[37]  The Court held that it should not.[38]  The reasons it gave are relevant to the case presently before us.

As just noted, the Supreme Court recognized in *Bancorp* that the statement in *Munsingwear* that vacatur was the "established practice" was "dictum."[39]  The Court also noted that the practice of vacatur "was not entirely uniform," observing that "at least three cases ha[d] been dismissed for mootness without vacatur within the four Terms preceding *Munsingwear*"[40] and that "the post-*Munsingwear* practice [has not] been as uniform as petitioner claims."[41]  The Court therefore examined vacatur anew.[42]  The Court equated "happenstance" with "'circumstances unattributable to any of the parties,'"[43] and, in distinguishing a case mooted by settlement, the Court said

---

[35] *Bancorp*, 513 U.S. at 19.

[36] *Id.* at 23 (quoting *Munsingwear*, 340 U.S. at 40).

[37] *Id.* at 24.

[38] *Id.* at 29.

[39] *Id.* at 23.

[40] *Id.* (citing *Schenley Distilling Corp. v. Anderson,* 333 U.S. 878 (1948)).

[41] *Id.* at 24 (citing *Allen & Co. v. Pac. Dunlop Holdings, Inc.*, 510 U.S. 1160 (1994); *Minn. Newspaper Ass'n, Inc. v. Postmaster Gen. of the U.S.*, 488 U.S. 998 (1989); *St. Luke's Fed'n of Nurses and Health Prof'ls v. Presbyterian/St. Luke's Med. Ctr.*, 459 U.S. 1025 (1982).

[42] *Id.*

[43] *Id.* at 23 (quoting *Karcher v. May*, 484 U.S. 72, 82 (1987)).

"[t]he reference to 'happenstance' in *Munsingwear* must be understood as an allusion to [the] equitable tradition of vacatur."[44]

The "equitable tradition" to which the Court referred was the disposition "of moot cases in the manner 'most consonant to justice,'" and in arriving upon that determination, the Court explained that "[t]he principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action."[45] The Court reasoned that "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment," and that "[t]he same is true when mootness results from unilateral action of the party who prevailed below."[46] But the Court also reasoned that "when federal courts contemplate equitable relief, our holding must also take account of the public interest."[47] Judgments "should stand," the Court concluded, "unless a court concludes that the public interest would be served by vacatur" because "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole" and "[t]hey are not merely the property of private litigants."[48] Elucidating these precepts, the Court concluded that "the public interest is best served by granting relief when the demands of 'orderly procedure' cannot be honored."[49]

The Fifth Circuit sitting en banc addressed the interplay between *Munsingwear* and *Bancorp* in *Staley v. Harris County, Texas*. In *Staley*, our

---

[44] *Id.* at 25.

[45] *Id.* at 24-25 (quoting *United States v. Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft*, 239 U.S. 466, 477-78 (1916)).

[46] *Id.* at 25.

[47] *Id.* at 26.

[48] *Id.* (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Phillips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)).

[49] *Id.* at 27 (citation omitted) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950)).

court denied Harris County's § 2106 motion to vacate a district court injunction after the county, who was the losing party in the district court and before a panel of our court, voluntarily removed a monument that formed the basis of the suit as part of planned renovations while the case was on appeal.[50]  In reaching its decision, the en banc court stated that "the Supreme Court rejected the uniform rule reflected in *Munsingwear* when it decided *U.S. Bancorp*."[51]  This court concluded that "*Bancorp* requires that we look at the equities of the individual case."[52]

In the present case, the appeal was mooted by actions of the Louisiana legislature, which is not a party to this suit.  No "fault" in mooting the appeal is attributable to any of the defendants, even though some of them are officials of the State of Louisiana.  Bobby Jindal, who was Governor when the new legislation was passed, signed the bill that was presented to him, but the legislative body crafted it, and there is no evidence that he was the moving force behind the legislation.  Hall is not subject to a money judgment or any injunctive relief as a result of the district court's judgment.  In this regard, Hall is not "forced to acquiesce in the judgment."[53]  One of the equitable principles animating the Supreme Court's exposition of the considerations when vacatur due to mootness is sought was whether a party seeking vacatur who was not at fault would be forced to comply with the judgment.  The res judicata effect, if any, of the district court's rulings pertain specifically to a state election law that no longer exists.  Under these circumstances, we cannot say that the district court abused its discretion in concluding that Hall was not entitled to vacatur under Rule 60(b)(6).

---

[50] *Staley v. Harris Cty., Tex.*, 485 F.3d 305, 307, 313-14 (5th Cir. 2007) (en banc).

[51] *Id.* at 312.

[52] *Id.*

[53] *Bancorp*, 513 U.S. at 25.

No. 15-30858

\* \* \*

For the foregoing reasons, we AFFIRM the order of the district court denying relief under Rule 60(b)(6).

No. 15-30858

HIGGINBOTHAM, Circuit Judge, concurring:

I generally concur with the majority's reasoning and outcome. However, where the mooting action in a case consists of a state's passage of new legislation, I think it unhelpful to assign comparative "fault" to the distinct public officials who play some role in the legislative process. Other courts have suggested that the governor's role may be relevant in the past,[1] for instance, but I remain unpersuaded. The state—with its Legislative and Executive Branches—acts in unity to pass legislation, and therefore other equitable considerations should govern vacatur in such cases.

---

[1] *See, e.g.*, *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 121 (4th Cir. 2000).